Alan GORDON, Lauren Gordon, and IBL Construction & Design, LLC, Appellant,

v.

Dennis LEASMAN d/b/a Leasman Contracting, Appellee.

and

Dennis Leasman d/b/a Leasman Contracting, Cross–Appellant,

v.

Alan Gordon, Lauren Gordon, and IBL Construction & Design, LLC, Cross–Appellee.

No. 01–10–00704–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 27, 2011.

Jonathan David Saikin, Weycer, Kaplan, Pulaski & Zuber, P.C., Houston, TX, for Appellant.

David Paul Petersen, The Law offices of David P. Petersen PC, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and HUDDLE.

## OPINION

JANE BLAND, Justice.

A carpenter sued a husband and wife, along with the wife's interior design company, to recover a balance owed for work he performed at the couple's home. A jury sided with the carpenter, Dennis Leasman, d/b/a Leasman Contracting. The homeowners, Lauren and Alan Gordon, and Lauren's interior design company, IBL Construction and Design, L.L.C., appeal. They contend that the evidence is insufficient to support the jury's findings that Lauren and Alan are individually liable to Leasman, and that Leasman had presented his claim for payment to them. They further assert that the Leasman's attorney made an incurable jury argument. Leasman cross-appeals, contending that the trial court erred by awarding interest at the rate of five percent per year rather than at the statutory rate of one and one-half percent per month.

We hold that the evidence supports the jury's findings and that the attorney's jury argument does not warrant a new trial absent a request for a mistrial. We further hold that the trial court erred in failing to award Leasman prejudgment interest at the applicable statutory rate, but did not err in its award of postjudgment interest. We therefore modify the judgment to provide for prejudgment interest at one and one-half percent per month, and affirm the judgment as modified.

### Background

In 2002, the Gordons began building a new home. During the construction, Lauren acted as the general contractor. An interior designer by trade, she owns and operates IBL. Alan is IBL's only other employee, but he receives no compensation. Lauren contracted with contractors, subcontractors and suppliers to build the Gordon's home.

In December 2003, when the home was nearly complete, Lauren contacted Leasman about doing some carpentry work at the house. She and Leasman agreed that he would work for $25.00 per hour, and his assistant would receive $17.00 per hour. Lauren agreed to supply the materials for the job.

The parties disputed whether IBL played a role in the contract. Leasman testified that, at the time they entered the agreement, Lauren did not mention IBL. In contrast, Lauren maintained that she handed him a business card that indicated that she was an interior designer for IBL at their first meeting. The business card listed her address as the address of the couple's new home. Leasman denied receiving a card. He testified that his agreement was with Lauren and that he was working for her and Alan.

After Leasman had worked at the Gordons' home for four days, he asked Lauren to whom he should address an invoice. Lauren instructed him to address his invoices to IBL. As instructed, he prepared a handwritten invoice for his first week, addressed it to IBL, and presented it to Lauren. Lauren paid the first invoice with an IBL check. After two more weeks of work, he addressed a second handwritten invoice to IBL and presented it to Lauren. Lauren again paid Leasman with a check from IBL.

Leasman continued work at the Gordons' house for two more weeks. He then presented Lauren with a third handwritten invoice addressed to IBL. The handwritten version of the third invoice charged the Gordons $3,099.91. According to Leasman, Lauren refused to pay the third invoice and requested a more legible copy from him. Leasman prepared a typewritten version of the third invoice, for $3,816.49, and brought it to the Gordons' house on the following Monday. Leasman testified he miscalculated the amount owed in the handwritten version, and the typewritten version was accurate.

Leasman testified that, when he arrived at the Gordons' house, Lauren said that he was not welcome there because he did not show up to work that morning. Lauren told Leasman that she intended to hire another carpenter to finish the job. Leasman testified that he was shocked, and as a result, forgot to hand Lauren the typewritten version of the third invoice. He returned the following morning, but she was not at the house. He gave the invoice to their housekeeper who told him that she would give it to Lauren.

Lauren testified that Leasman had not shown up to the house for four days before Friday, January 23, and that Leasman's assistant had been working at the house unsupervised. According to Lauren, she confronted Leasman about leaving his assistant unsupervised. She told him that he had to be at the house if he wished to continue the job. She claimed that Leasman abandoned the job at that point. She testified that she received neither the handwritten nor the typewritten version of the third invoice. She maintained that Leasman only presented her with receipts for supplies he had used up to that point. Lauren paid Leasman for the supplies.

Leasman also testified that the day after he left the typewritten invoice with the Gordons' housekeeper, he phoned Alan to request payment for his services. According to Leasman, Alan stated that he would pay Leasman after his daughter's wedding. Later, Leasman again called Alan in an attempt to obtain payment. During the second call, Alan stated that he had problems with some of Leasman's work. Leasman asked if he could come to the house to inspect the problems. Alan said he was too busy at that time because he was out of town on business. Leasman then made

a third phone call to Alan trying to collect payment for his services. According to Leasman, Alan reiterated that he had problems with Leasman's work and said he would not pay him.

Alan admitted that he had conversations with Leasman after he stopped working at the house. He testified that he invited Leasman to the house to inspect the work. He told Leasman to call him back and set up a time to come over to the house. He testified that he did not hear from Leasman again until about two years later in June 2006, when Leasman filed this lawsuit. He nevertheless admitted that the handwritten version of the third invoice was in either his personal files or the IBL files.

Leasman sued Lauren and Alan for breach of contract, quantum meruit, and unjust enrichment. The Gordons answered with a general denial, and they maintained that they were not liable in the capacity in which Leasman sued them. They also asserted counterclaims for negligence and breach of warranty. In response, Leasman amended his petition and added IBL as a defendant.

In March 2010, the case proceeded to a jury trial. The jury returned a verdict in favor of Leasman on his breach of contract claim against Lauren, Alan, and IBL. The jury found against the three defendants on their negligence and breach of warranty counterclaims. The trial court entered judgment on the jury's verdict in favor of Leasman, awarding him $3,780.00 in damages plus prejudgment and postjudgment interest calculated at five percent per year and attorneys' fees.

## Legal and Factual Sufficiency Challenges

### Standard of Review

■ In conducting a legal sufficiency review of the evidence, we consider all of the evidence in a light favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We consider evidence favorable to the finding if a reasonable factfinder could consider it, and disregard evidence contrary to the finding unless a reasonable factfinder could not disregard it. *Id.* at 827. In conducting a factual sufficiency review, we consider all of the evidence supporting and contradicting the challenged finding and set it aside only if the evidence is so weak as to make it clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; we may not impose our own opinion to the contrary. *City of Keller,* 168 S.W.3d at 819. Because it is the jury's province to resolve conflicting evidence, we assume that jurors resolved conflicts in the evidence in accord with their verdict. *Id.*

### Individual Liability

■ The Gordons contend that the evidence is legally and factually insufficient to support the jury's finding that they are individually liable for the unpaid debt, because they acted as IBL's agents and not on their own account.

■ The law does not presume agency. *Bernsen v. Live Oak Ins. Agency, Inc.,* 52 S.W.3d 306, 309 (Tex.App.-Corpus Christi 2001, no pet.); *Sw. Bell Media, Inc. v. Trepper,* 784 S.W.2d 68, 72 (Tex.App.-Dallas 1989, no writ). But an agent will personally be held liable on a contract he signs if he fails to disclose his agency. *Ward v. Prop. Tax Valuation, Inc.,* 847 S.W.2d 298, 300 (Tex.App.-Dallas 1992, writ denied). To avoid personal liability,

an agent must prove he (1) disclosed his representative capacity to the other contracting party; and (2) identified the true principal for whom he was acting. *See DiGiammatteo v. Olney*, 794 S.W.2d 103, 104 (Tex.App.-Dallas 1990, no writ); *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex.App.-Austin 1986, writ ref'd n.r.e.). "The test for disclosure is the other party's knowledge, or reasonable grounds to know, of the principal's existence or identity, irrespective of the source from which the other party obtains it." *Burris*, 714 S.W.2d at 435 (citing *Johnson v. Armstrong*, 83 Tex. 325, 18 S.W. 594, 595 (Tex.1892); *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n.r.e.)). The issue of disclosure is usually a fact question. *Lacquement v. Handy*, 876 S.W.2d 932, 939 (Tex.App.-Fort Worth 1994, no writ). In determining whether sufficient disclosure was made, we look to the time that the parties entered into the contract. *Posey v. Broughton Farm Co.*, 997 S.W.2d 829, 832 (Tex.App.-Eastland 1999, pet. denied); *Lacquement*, 876 S.W.2d at 940. Knowledge acquired after a cause of action has accrued cannot affect the right to recover from the agent personally on a contract. *Lake v. Premier Transp.*, 246 S.W.3d 167, 172 (Tex.App.-Tyler 2007, no pet.); *Dodson v. Peck*, 75 S.W.2d 461, 463 (Tex.Civ.App.-Amarillo 1934, writ dism'd w.o.j.).

Here, Leasman and Lauren orally agreed that Leasman would perform carpentry work for a specified hourly rate plus expenses for materials. At the time he entered into the agreement, Leasman knew nothing about IBL and believed that he was entering into a contract with Lauren. He thought he was working for the Gordons. Lauren never told Leasman that she was acting as an agent of IBL at the time they entered into the agreement. She testified that she gave Leasman a business card indicating that she was an interior designer for IBL, but Leasman testified that he never received a card. The jury was free to resolve this conflict in the evidence in favor of Leasman. *See City of Keller*, 168 S.W.3d at 819.

The remaining circumstances cited by the Gordons—Leasman's invoices addressed to IBL and the IBL checks issued to Leasman—do not relate to the time Leasman and Lauren entered into the contract; this evidence does not relieve the Gordons from a finding of personal liability on the contract, given the evidence to the contrary. *See Anderson v. Smith*, 398 S.W.2d 635, 637 (Tex.Civ.App.-Dallas 1965, no writ) (holding that mere receipt of checks bearing principal's name did not relieve agent of liability on contract because agency relationship must be disclosed at contract's formation); *see also Burch v. Hancock*, 56 S.W.3d 257, 262 (Tex.App.-Tyler 2001, no pet.) (holding that evidence was legally and factually sufficient to support trial court's finding that agent was individually liable where plaintiff received check from principal, because agent never told plaintiff that he was acting solely as agent, and plaintiff had no knowledge of principal at time contract became enforceable); *Posey*, 997 S.W.2d at 832 (holding that agent was personally liable on contract because agent did not disclose principal at time contract became enforceable even though plaintiff subsequently received drafts with principal's name on them). Because the evidence supports the jury's finding that Lauren did not disclose any agency relationship at the time Leasman and Lauren entered the contract and that Lauren entered into the agreement in her individual capacity, we hold that the evidence is legally and factually sufficient to support the jury's finding. *See City of Keller*, 168 S.W.3d at 819; *Cain*, 709 S.W.2d at 176.

*Presentment*

█ The Gordons maintain that the evidence is legally and factually insufficient to support the jury's finding that Leasman presented his claim to them as Chapter 38 of the Texas Civil Practice and Remedies Code requires. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008).

█ As a general rule, each party bears the cost of its own attorney, absent a contractual or statutory provision allowing for recover of attorney's fees. *Panizo v. Young Men's Christian Ass'n of the Greater Houston Area,* 938 S.W.2d 163, 168 (Tex.App.-Houston [1st Dist.] 1996, no writ). Section 38.001(8) of the Civil Practice and Remedies Code provides that a party may recover reasonable attorney's fees if its claim is for "an oral or written contract." TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8). To recover attorney's fees under that provision, a claimant must: (1) be represented by an attorney; (2) present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) show that payment was not tendered before the expiration of the 30th day after the claim was presented. *Id.* § 38.002(1)-(3). Presentment of a claim under section 38.002(2) is required to allow the debtor to pay the claim before incurring an obligation to pay attorney's fees. *Panizo,* 938 S.W.2d at 168. Filing a lawsuit does not, by itself, constitute presentment. *Id.*

█ No particular form of presentment is required—it may be written or oral. *Id.* "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Standard Constructors, Inc. v. Chevron Chem. Co.,* 101 S.W.3d 619, 627 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (citing *Panizo,* 938 S.W.2d at 168).

█ Here, Leasman testified that he handed Lauren the handwritten version of the third invoice for his carpentry work. Lauren denied she received a third invoice from Leasman, but Alan admitted that the handwritten version of the invoice was in either his personal files or the IBL files. Nonpayment of a bill or invoice for thirty days satisfies the presentment requirement. *See De Los Santos v. Sw. Tex. Methodist Hosp.,* 802 S.W.2d 749, 757 (Tex.App.-San Antonio 1990, no writ) (evidence that appellant received bill from hospital sufficiently established presentment of claim); *Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.,* 666 S.W.2d 549, 554 (Tex.App.-Houston [14th Dist.] 1984, writ dism'd) (presentation of invoices were probative to show presentment of the claim); *Roylex, Inc. v. Avco Cmty. Developers, Inc.,* 559 S.W.2d 833, 838 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ) (sending invoices constitutes sufficient demand for payment). In addition, Leasman phoned Alan three times in 2004, asking for payment for his services. Alan refused to pay Leasman. Leasman filed suit in 2006. An oral request for performance is sufficient to meet the presentment requirement of section 38.002. *See Harrison v. Gemdrill Int'l, Inc.,* 981 S.W.2d 714, 719 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (holding appellant's trial testimony that, when he informed appellee of his resignation, he told appellee he wanted to "collect his pay 'without fail,'" constituted sufficient evidence of presentment); *see also Criton Corp. v. Highlands Ins. Co.,* 809 S.W.2d 355, 358 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (holding that oral request by phone to tender full performance under contract was sufficient to establish presentment); *King Optical v. Automatic Data Processing of Dallas, Inc.,* 542 S.W.2d 213, 217 (Tex.Civ.App.-Waco 1976,

writ ref'd n.r.e.) (oral request for payment and discussion of amount due, how it would be paid, and when, was sufficient presentment). We hold that the evidence supports the jury's finding that Leasman presented his claim to the defendants. *See City of Keller,* 168 S.W.3d at 819; *Cain,* 709 S.W.2d at 176. Accordingly, the trial court properly awarded Leasman his reasonable attorney's fees.

### Improper Jury Argument

During closing argument, Leasman's attorney stated:

> Why did we hear about IBL, IBL, IBL? What does it matter? If they own IBL and they owe the money if it comes out of IBL's pocketbook or it comes out of the Gordon's pocketbook, what does it matter? Why are they making such a big deal? I'm sure you are wondering that too. Why does he make a big deal? Their counsel talked to Mr. Leasman on the stand and tried to tell him how easy it is to go form a corporation. Why didn't you form a corporation? It's easy. Even you could do it. Well, what's easier? One thing. Closing IBL. If you restrict your judgment in this case to IBL and a judgment is entered only against them, never going to be a penny paid in this case. IBL is never—[RR 4:208]

The Gordons objected that Leasman's attorney had made an improper argument. The trial court sustained the objection. The Gordons did not ask the trial court to instruct the jury to disregard the argument or move for a mistrial. On appeal, they contend that the argument was incurable, warranting a new trial.

■■■ Incurable jury argument is rare. *Living Ctrs. of Tex., Inc. v. Penalver,* 256 S.W.3d 678, 681 (Tex.2008). Incurable jury argument exists when an argument is so prejudicial or inflammatory

that an instruction to the jury to disregard cannot eliminate the harm. *Clark v. Bres,* 217 S.W.3d 501, 509 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). "The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a 'juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument.' " *Phillips v. Bramlett,* 288 S.W.3d 876, 883 (Tex.2009) (quoting *Goforth v. Alvey,* 153 Tex. 449, 271 S.W.2d 404, 404 (1954)). Incurable argument must strike at the very core of the judicial process. *Bramlett,* 288 S.W.3d at 883. Appeals to racial prejudice and unsupported, extreme, and personal attacks on opposing parties, counsel, and witnesses that compromise the basic premise that a trial provides impartial, equal justice are examples of incurable argument. *Living Ctrs. of Tex.,* 256 S.W.3d at 681; *see e.g., In re W.G.W.,* 812 S.W.2d 409, 416 (Tex.App.-Houston [1st Dist.] 1991, no writ) (holding attempt to link mother's cervical cancer with immoral conduct in custody dispute was incurable where there was no evidence to support such connection); *Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 756–59 (Tex.App.-Texarkana 1992, writ denied) (unsupported allegations that opposing counsel manufactured evidence and suborned perjury are generally incurable); *Texas Employers' Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 862 (Tex.App.-San Antonio 1990, writ denied) (holding intentional appeal for verdict based on parties' race or ethnicity is incurable).

■■■ Here, the argument was that, if the jury found only IBL liable on the agreement with Leasman, then Leasman would not recover. Based on the record as a whole, we conclude that the argument was not so extreme that a juror might

have been persuaded to agree with a verdict contrary to one the juror would have adopted absent the argument. *Bramlett,* 288 S.W.3d at 883. The jury argument was not a personal attack on counsel or the parties. It did not strike at the core of the judicial process. *See id.* Accordingly, we hold that the argument was not incurable.

### Cross Appeal on Prejudgment and Postjudgment Interest

■ On cross-appeal, Leasman contends that the trial court erred in awarding prejudgment and postjudgment interest at the rate of five percent per year rather than at the rate of one and one-half percent per month, as the Prompt Payment Act authorizes. *See* TEX. PROP.CODE ANN. § 28.004 (West 2000). In response, the Gordons contend that Leasman did not properly plead the rate of one and one-half percent per month, and he failed to obtain a jury finding on whether they violated the Prompt Payment Act.

### *Prompt Payment Act*

The Prompt Payment Act provides that an owner of real property, who receives a written request for payment from a contractor for an amount that is allowed under a contract for properly performed work, must pay the amount, less any amount withheld as authorized by statute, not later than the thirty-fifth day after the date the owner receives the request. TEX. PROP.CODE ANN. § 28.002(a). Section 28.004, captioned "Interest on Overdue Payment," provides as follows:

(a) An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due.

(b) An unpaid amount bears interest at the rate of 1 1/2 percent each month.

(c) Interest on an unpaid amount stops accruing under this section on the earlier of:

(1) the date of delivery;

(2) the date of mailing, if payment is mailed and delivery occurs within three days; or

(3) the date a judgment is entered in an action brought under this chapter.

*Id.* § 28.004.

### *Prejudgment Interest*

■ Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is found due and payable at a definite date before judgment. *Jarrin v. Sam White Oldsmobile Co.,* 929 S.W.2d 21, 24 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *see, e.g., Henry Bldg., Inc. v. Milam,* No. 05–99–01400–CV, 2001 WL 246882, at *3–4 (Tex. App.-Dallas Mar. 14, 2001, pet. denied) (holding that trial court erred by awarding contractor six-percent-per-year prejudgment interest instead of one and one-half percent per month prejudgment interest under section 28.004(b)). A general prayer for prejudgment interest sufficiently invokes a statutory right to such interest. *Benavidez v. Isles Constr. Co.,* 726 S.W.2d 23, 25 (Tex.1987); *Olympia Marble & Granite v. Mayes,* 17 S.W.3d 437, 441 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Because the plaintiff is entitled to prejudgment interest based on a prayer for general relief alone, a plaintiff need not specifically plead prejudgment interest if the claim falls within the scope of a statute authorizing pre-judgment interest. *Olympia Marble & Granite,* 17 S.W.3d at 441; *see e.g. Talley Constr. Co. v. Rodriguez,* 01–03–01147–CV, 2006 WL 908180 (Tex.App.-Houston [1st Dist.] Apr. 6, 2006, no pet.) (holding that trial court did not err in awarding claimant eighteen percent per year in pre-judgment interest under

section 28.004(b) because claimant's pleading included prayer for general relief).

In his cross-appeal, Leasman contends that his claim for payment against the Gordons falls within the provisions of section 28.002(a). *See* TEX. PROP.CODE ANN. § 28.002(a). The Gordons failed to pay him for carpentry work he performed as authorized on their real property even after he sent them two written invoices for payment. In his fourth amended petition, Leasman asked for prejudgment interest as provided by section 28.004. Because his claim is for an overdue payment that a real property owner owed him for contracting work, it falls within the provisions of section 28.002(a), the trial court should have awarded prejudgment interest at one and one-half percent per month as provided in section 28.004(b). Accordingly, we modify the rate of prejudgment interest in the judgment to one and one-half percent per month.

### Postjudgment Interest

The Prompt Payment Act governs interest on an unpaid claim only to the date of judgment. *See* TEX. PROP.CODE ANN. § 28.004(c). The Texas Finance Code governs postjudgment interest. *See* TEX. FIN. CODE ANN. § 304.003(c)(2) (West 2006); *Jarrin*, 929 S.W.2d at 25 ("Post-judgment interest is ... mandated by statute."). The Finance Code provides that the consumer credit commissioner shall determine the postjudgment interest rate to apply to money judgments. TEX. FIN.CODE ANN. § 304.003(c)(2). The interest rate published by the consumer credit commissioner for judgments issued in May 2010 was five percent per year.[1] Accordingly, we hold that the trial court did not err in awarding Leasman postjudgment interest at a rate of five percent per year.

### Conclusion

We hold that the evidence supports the jury's findings that favor the carpenter for his claim for payment for services rendered, and that his attorney's jury argument was not incurable. We hold that the proper interest rate for prejudgment interest is one and one-half percent per month. The trial court did not err in its award of postjudgment interest. Accordingly, we modify the judgment to provide for a prejudgment interest rate of one and one-half percent per month. We affirm the judgment as modified.

---

1. *Interest Rates*, OFFICE OF CONSUMER CREDIT COMMISSIONER. http://www.occc.state.tx.us/ pages/int_rates/index.html (last visited Oct. 11, 2011).