**Opinion issued October 27, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00301-CV**

———————————

**DEANA A. POLLARD SACKS, Appellant**

**V.**

**THOMAS F. HALL AND THOMAS F. HALL, D.D.S., M.S. P.A., Appellees**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 919405**

---

**O P I N I O N**

Deana Pollard Sacks sued her former orthodontist, Dr. Thomas F. Hall, and

his professional association, Thomas F. Fall, D.D.S., M.S. P.A. (collectively, "Dr.

Hall") for breach of contract, negligent misrepresentation, fraud, and violations of

the Deceptive Trade Practices Act arising from Dr. Hall's alleged failure to give her a refund for an ineffective orthodontic treatment. Dr. Hall counterclaimed for breach of contract. After a jury found in favor of Dr. Hall, the trial court entered judgment in the amount of $1,220 in actual damages, $35,000 in trial-level attorney's fees, and $45,000 in conditional appellate attorney's fees. In six issues, Sacks contends that (1) the trial court erroneously awarded attorney's fees to Dr. Hall because he failed to plead or prove that he presented his breach of contract claim to Sacks; (2) the trial court erroneously awarded attorney's fees to Dr. Hall because he failed to segregate recoverable from unrecoverable fees; (3) the jury's finding that Dr. Hall suffered $1,220 in damages was not supported by legally or factually sufficient evidence; (4) the trial court erred in submitting the damages question to the jury because there was legally insufficient evidence of the value of the orthodontic treatment performed; (5) the trial court erred in entering judgment on the damages question because the finding was against the great weight and preponderance of the evidence; and (6) the trial court erred in awarding damages to Dr. Hall because he failed to satisfy a condition precedent to recovery.

We modify the judgment of the trial court and affirm as modified.

## Background

Sacks first visited Dr. Hall on May 10, 2006, seeking to have her teeth straightened. Dr. Hall discussed treatment options with Sacks, advised her to see

2

her regular dentist before starting orthodontic treatment, and scheduled her for X-rays with a third-party company and a follow-up appointment with him to determine the treatment to be used. Sacks obtained X-rays of her teeth, but she was unable to visit her dentist prior to seeing Dr. Hall for the second time.

Sacks next visited Dr. Hall on June 6, 2006. At this visit, Sacks agreed that Dr. Hall would install a combination of metal and ceramic braces on her lower teeth and OrthoClear trays on her upper teeth. Sacks met with Glenda Johnson, Dr. Hall's office manager at the time, and signed a Financial Contract. This contract broke down the pricing as follows:

| | |
|---|---|
| Orthodontic Regular Fee | $5995.00 |
| Insurance/Plan | +2000.00 |
| Adjusted Treatment Fee | 7995.00 |
| | -2000.00[1] |
| Less Initial Payment | 4775.00 |
| Less Estimated Insurance Benefits Assigned | -1220.00 |
| Balance Due | 0 |
| Prepay Fee | — |
| Payment Plan Fee | — |
| Total Amount Due | $0 |

---

[1] Johnson had contacted Aetna, Sacks' dental insurance carrier, which indicated that, based on her dental insurance plan, Sacks was entitled to a 25% discount on fees owed to Dr. Hall. Aetna had also indicated to Johnson that it would pay $1,220 of the cost of treatment as insurance benefits. Ultimately, Aetna never paid this amount to Dr. Hall, and recovery of this amount from Sacks formed the basis of his breach of contract claim.

All of these amounts were handwritten on the contract, and next to the "-2000.00" amount, which did not have a preprinted blank indicating the purpose of that amount, was another handwritten notation that stated "Insurance [discount]." The contract included a statement, in all capital letters, that "Patient is responsible for any cost not covered by insurance."

> The contract also included the following clause:
>
> INSURANCE ASSIGNMENT: In order for our office to accept insurance assignment, we must have your completed, signed insurance form BEFORE the braces are placed. If insurance has been assigned and is part of this contract but insurance payments cease for any reason, a new contract will need to be signed for the remaining account balance. If you are on a dental plan you must remain active during the treatment, if the dental plan terminates for any reason, the fee will change to the orthodontic regular fee and a new contract will be required. *([A]ny discounts or special fee[s] are canceled[.])* Past due amounts will be charged a collection fee in addition to late fees.

Sacks did not sign a form assigning insurance benefits. Sacks and Dr. Hall agreed that after Dr. Hall installed the appliances on Sacks' teeth, he would provide maintenance services for twenty-four months plus a twelve-month retention period beyond that. Sacks paid $4,775 on June 6, 2006, and Dr. Hall applied the braces to her lower teeth and took the impressions of Sacks' upper teeth that would form the basis for the OrthoClear trays that she would wear.[2]

---

[2] Dr. Hall testified that the majority of his work, such as fittings and installation of the braces, is accomplished early in the process and that the follow-up appointments are designed to be "short adjustment appointments" occurring every

Sacks had several follow-up appointments over the next few months, during which Dr. Hall adjusted her braces and distributed some of her OrthoClear trays. In September 2006, Sacks visited her regular dentist because of pain in her upper teeth, and her dentist identified several teeth that had problems, including two teeth that needed root canal treatment. Sacks subsequently visited several dentists and endodontists in an effort to resolve these problems, and she had root canal treatments and new crowns placed on some of her teeth. Sacks stopped wearing the OrthoClear trays on her upper teeth, first because of the pain from her underlying dental problems and then because the additional dental work that she had done slightly changed the shape of her teeth, which meant that the pre-fabricated OrthoClear trays, made from the impressions of her teeth taken in June 2006, no longer fit her teeth. Sacks last saw Dr. Hall on November 27, 2006.

On January 17, 2007, Sacks called Dr. Hall's office and informed him that she wanted to pick up her records and transfer her orthodontic care elsewhere. The next day, Glenda Johnson informed Sacks that Aetna refused to pay the remaining $1,220 for her treatment. Sacks testified that Johnson "did not say that [Sacks] owe[s] money" to Dr. Hall's office, but Johnson did ask Sacks to contact Aetna in an attempt to resolve the issue. Aetna then informed Sacks that her insurance plan

one to two months and lasting approximately ten to fifteen minutes. Twenty-four follow up appointments would essentially amount to no more than "several hours" of Dr. Hall's time.

5

provided a twenty-five percent discount for treatment, which had already been applied in this case, and that it would not pay any additional amounts. According to Sacks, neither Dr. Hall nor Johnson ever said, "You now have to pay us $1,220," they never asked her to sign a second contract concerning payment of the remaining $1,220, and she "never heard about the [$]1[,]220 supposedly owing until [she] got the counterclaim in this lawsuit." Dr. Hall agreed that he "never asked [Sacks] for the money or sent her a collection letter." Sacks stated that Dr. Hall never asked her to pay more than $4,775 and that she never did pay more than $4,775.

Dr. Hall's chart for Sacks indicated that he offered her a refund in the amount of $1,820 on January 24, 2007. Sacks testified that during this conversation, Dr. Hall "refused to treat [her] any longer, unless [she] paid him more money." Sacks requested and received a copy of her records from Dr. Hall in mid to late-March 2007. The records contained two internal ledgers, dated two minutes apart on March 20, 2007. The first ledger, for "Contract #6330," listed Sacks as the sole party responsible for payment, stated that the "Original contract amount" was $6,775 and the "[i]nitial charge amount" was $4,775, and indicated that Sacks' "Remaining commitment" was $0. The second ledger, for "Contract #6372," listed the responsible party as Sacks with the notation "Texas Southern University/Aetna Healthcare," stated that the "Original contract amount" was

6

$1,220, the "Remaining commitment" was $1,220, and the "Amount Due Now" was $459.[3]

On May 27, 2008, Sacks filed suit against Dr. Hall and initially asserted claims of DTPA violations, medical negligence, fraud, and negligent misrepresentation. Sacks later added a claim for breach of contract and decided not to pursue her claim for medical negligence. Dr. Hall then counterclaimed for bad faith, fraudulent inducement, and breach of contract, alleging that Sacks "failed to compensate [Dr. Hall] for the orthodontic services provided." Dr. Hall alleged that Sacks' failure to pay "is a breach of the parties' contract" which entitled Dr. Hall "to damages for [Sacks'] breach, as well as reasonable attorneys' fees pursuant to" Civil Practice and Remedies Code section 38.001.

The jury charge asked whether Dr. Hall committed fraud against Sacks, whether he made a negligent misrepresentation to Sacks, whether he engaged in any false, misleading, or deceptive acts or practices, and whether he breached the parties' contract. The jury answered "no" to all of these questions. The jury answered "yes" to Question Number 8, which asked whether Sacks breached the parties' contract, and answered, in response to Question Number 9, that Sacks'

---

[3]   Dr. Hall testified that his office's software program maintains a ledger for the patient's portion of the payment and the insurance company's portion. The two ledgers must be read together, and when the two for Sacks were read together, they reflected that Dr. Hall was entitled to a total payment of $7,995 for his orthodontic services rendered.

7

breach was not excused. The trial court also submitted Question Number 10 to the jury, which read as follows:

> What sum of money if paid now in cash will fairly [and] reasonably compensate Hall for the damages, if any, that resulted from Sacks' failure to comply with the Financial Contract?
>
> Loss of the benefit of the bargain: The difference, if any, between the value of the agreement [sic] between the value of orthodontic care agreed to by the parties and the value of the orthodontic care performed Dr. Thomas Hall, D.D.S. The difference in value, if any, shall be determined at the time and place the orthodontic care was performed.
>
> Do not add any amount for interest on damages, if any.
>
> Answer separately in dollars and cents for damages if any.
>
> (a)   Loss of benefit of the bargain sustained in the past.

The jury answered, "$1,220." The jury also awarded Sacks $35,000 in trial-level attorney's fees and a total of $45,000 in conditional appellate attorney's fees.[4]

Sacks filed numerous post-trial motions, including a motion for judgment notwithstanding the verdict, a motion for new trial, and a motion to modify, correct, or reform the judgment. Among other contentions, Sacks argued that Dr.

---

[4]   Dr. Hall's counsel testified that Dr. Hall had incurred approximately $138,000 in attorney's fees and expenses from the time Sacks filed suit in May 2008 until trial in September 2013. He also testified, however, that in light of the factors enumerated in *Arthur Andersen v. Perry Equipment Corp.* concerning the reasonableness and necessity of attorney's fees, Dr. Hall was only seeking to recover $35,000 in trial-level attorney's fees. *See* 945 S.W.2d 812, 818 (Tex. 1997) (setting out factors to consider when determining reasonableness of attorney's fees award). He further testified that he was unable to segregate his attorney's fees because claims on which attorney's fees were not recoverable were "inextricably intertwined" with the claims on which attorney's fees were recoverable.

Hall failed to plead and prove that he presented his breach of contract claim to her, and, thus, he could not recover attorney's fees pursuant to Civil Practice and Remedies Code section 38.002. The trial court denied all of these motions and entered an amended final judgment on January 13, 2014. The trial court rendered a take-nothing judgment against Sacks and ordered that Dr. Hall recover $1,220 from Sacks, plus pre-judgment interest and costs. The trial court also ordered that Dr. Hall recover $35,000 in trial-level attorney's fees, and a total of $45,000 in conditional appellate-level attorney's fees. This appeal followed.

## Sufficiency of the Evidence

In her third issue, Sacks argues that the trial court erred in awarding damages to Dr. Hall because the amount awarded was not supported by legally and factually sufficient evidence.[5] In her fourth issue, she contends that the trial court erred in submitting the damages question to the jury because there was legally insufficient evidence to establish the value of the orthodontic treatment performed. In her fifth issue, Sacks argues that the jury's answer to the damages question was against the great weight and preponderance of the evidence. We address these issues together.

---

[5] Sacks does not challenge the legal and factual sufficiency of the evidence supporting the jury's findings that Dr. Hall did not commit fraud, negligent misrepresentation, violations of the DTPA, or breach of contract, nor does she challenge the sufficiency of the evidence supporting the jury's findings that she breached the parties' contract and that her breach was not excused.

## A. *Standard of Review*

When conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. We sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the appellant challenges a jury finding on an issue on which she did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the jury finding is so weak as to make the verdict clearly

wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The jury is the sole judge of the witnesses' credibility; and it may choose to believe one witness over another. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not substitute our judgment for that of the jury. *Id.* "Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict." *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

In the charge, the court "shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. "Rule 278 is a directive to trial courts requiring them to submit requested questions to the jury if pleadings and any evidence support those questions." *4901 Main, Inc. v. TAS Auto., Inc.*, 187 S.W.3d 627, 630 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992), and *Roberts v. S. Pac. Transp. Co.*, 44 S.W.3d 183, 187 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). A trial court may refuse to submit a question to the jury if there is no evidence to support the question. *See id.* at 630–31.

### B. Evidence Supporting Damages Question

In a breach of contract action, the normal measure of damages "is just compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain." *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Benefit-of-the-bargain damages "measure the difference between the value as represented and the value as received." *Matheus v. Sasser*, 164 S.W.3d 453, 459 (Tex. App.—Fort Worth 2005, no pet.). The "ultimate goal" in measuring damages in a breach of contract case is "to provide just compensation for any loss or damage actually sustained as a result of the breach." *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). "The purpose of the benefit-of-the-bargain measure of damages is to restore the injured party to the economic position it would have been in had the contract been fully performed." *Id.*; *see also Bowen*, 227 S.W.3d at 96 ("With respect to damages in breach-of-contract cases, the general rule is that 'the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed.'") (quoting *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex. Civ. App.—Dallas 1980, no writ)).

The trial court submitted the following damages question to the jury:

What sum of money if paid now in cash will fairly [and] reasonably compensate Hall for the damages, if any, that resulted from Sacks' failure to comply with the Financial Contract?

Loss of the benefit of the bargain: The difference, if any, between the value of the agreement [sic] between the value of orthodontic care agreed to by the parties and the value of the orthodontic care performed by Dr. Thomas Hall, D.D.S. The difference in value, if any, shall be determined at the time and place the orthodontic care was performed.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages if any.

(a)    Loss of benefit of the bargain sustained in the past.

ANSWER: $1,220.00

Sacks objected to the submission of this question in the charge, arguing that "there's no evidence or, alternatively, there's insufficient evidence to submit a damage question based on the evidence in the case." Sacks also stated:

Further, we specifically object to a submission on a, quote "loss" of the benefit of the bargain theory because there's no evidence or insufficient evidence to show what the, quote, "value" of the agreement between the value of the orthodontic care agreed to by the parties and the value of the orthodontic care performed by Dr. Hall. He gave no testimony as to what that number would be. So, the jury has absolutely no evidence that would allow them to answer this question, even if it was a proper question to submit.

Dr. Hall responded that the evidence presented at trial indicated that the parties promised that Dr. Hall would receive $5,995 for his orthodontic services but he actually received only $4,775 from Sacks. Dr. Hall argued that loss of benefit of

13

the bargain was the appropriate measure of damages. The trial court overruled Sacks' objection.

Question Number 10 asked the jury to determine Dr. Hall's damages as a result of Sacks' breach of the contract, but it defined "loss of benefit of the bargain" in terms of the difference between value of the care agreed to by the parties and the value of the care performed, or from the perspective of Sacks as the non-breaching party and Dr. Hall as the breaching party. It did not define "loss of benefit of the bargain" in terms of the difference between the value of the contract—or what Dr. Hall expected to recover from Sacks under the terms of the contract—and the value of what he received from Sacks—or the amount that she actually paid him—which correctly frames the question from the perspective of Dr. Hall as the non-breaching party and Sacks as the breaching party. Although the ultimate damages question was appropriate and correct, the instruction defining "loss of benefit of the bargain" was erroneous.

Sacks properly objected to the submission of Question Number 10, but the trial court submitted an erroneous instruction on loss of benefit of the bargain over Sacks' objection. In this circumstance, we measure the sufficiency of the evidence to support the jury's answer to the question under a proper definition of "loss of benefit of the bargain." *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003) ("Because the trial court submitted an erroneous definition of joint enterprise

14

[in the jury charge] over a proper objection, we measure the legal sufficiency of the evidence supporting the jury's finding of joint enterprise against the Restatement's definition of joint enterprise as adopted in *Shoemaker*."); *Latham v. Burgher*, 320 S.W.3d 602, 606 n.1 (Tex. App.—Dallas 2010, no pet.) ("[W]hen, as in this case, an objection to the charge is properly preserved, we determine whether the charge submitted was erroneous and then measure the sufficiency of the evidence against the correct standard."); *W. L. Lindemann Operating Co. v. Strange*, 256 S.W.3d 766, 775 (Tex. App.—Fort Worth 2008, pet. denied) (stating same).  The correct standard for assessing loss of benefit of the bargain damages measures the difference between the value as represented and the value as received by the non-breaching party.  *See Matheus*, 164 S.W.3d at 459; *see also Clear Lake City Water Auth.*, 344 S.W.3d at 523 (stating that purpose of benefit-of-the-bargain damages is to "restore the injured party to the economic position it would have been in had the contract been fully performed").

Under the terms of the contract, Dr. Hall was entitled to $5,995 for his services.  Aetna originally informed Dr. Hall that it would pay $1,220 of this amount.  The contract included a provision informing Sacks that she would be responsible for the full cost of the orthodontic services if Aetna did not pay the estimated insurance benefits.  It is undisputed that Aetna informed Sacks and Dr. Hall that it would not pay the $1,220 in estimated benefits and the only amount

15

Sacks paid to Dr. Hall was $4,775, which she paid prior to the application of her braces and the OrthoClear trays. Although Dr. Hall did not state a precise value for the orthodontic services that he performed, he testified that because "the majority of the work, the fittings, the braces installation is done early on, the following appointments are short adjustment appointments. Typically they are every couple of months. Sometimes once a month. More often every two months. They are typically 15 to 20 minutes long." He estimated that the combined follow-up appointments over the remainder of the contract term would only amount to "several hours" of his time.

Dr. Hall thus presented evidence that he performed a substantial portion of the contracted-for services, that the parties agreed that he would receive $5,995 for his services, that Sacks paid $4,775, that she agreed to pay the remaining portion if her insurance company did not pay its estimated benefits, and that she failed to pay the remaining $1,220 after Aetna indicated that it would not pay. We therefore hold that, measured under the correct jury instruction, Dr. Hall presented legally and factually sufficient evidence that he sustained $1,220 worth of benefit-of-the-bargain damages. *See Clear Lake City Water Auth.*, 344 S.W.3d at 523; *Matheus*, 164 S.W.3d at 459.

We further conclude that the submission of the instruction incorrectly defining "loss of the benefit of the bargain" constituted harmless error. An

16

appellate court will not reverse a judgment for charge error unless that error was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the [appellant] from properly presenting the case to the appellate courts." *See Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (quoting TEX. R. APP. P. 61.1 (stating standard for reversible error in cases before Texas Supreme Court), and TEX. R. APP. P. 44.1(a) (stating standard for reversible error in cases before courts of appeals)). In determining whether the instruction probably caused an improper judgment, we examine the entire record. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). Charge error is generally considered harmful if it relates to a contested, critical issue. *Thota*, 366 S.W.3d at 687 (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009)); *DeLeon v. Pickens*, 933 S.W.2d 286, 291 (Tex. App.—Corpus Christi 1996, writ denied) ("In other words, the erroneous instruction must have caused the case to be decided differently than it would have been without it.").

The jury in this case found that Sacks breached the contract and that her breach was not excused. The trial court submitted a proper damages question in the charge, asking the jury, "What sum of money if paid now in cash will fairly [and] reasonably compensate Hall for the damages, if any, that resulted from Sacks' failure to comply with the Financial Contract?" The trial court also

17

submitted the proper measure of damages—loss of benefit of the bargain. The trial court, however, incorrectly defined "loss of the benefit of the bargain," by focusing on the value of the services performed by Dr. Hall, the non-breaching party, instead of on the difference between the value actually received by Dr. Hall from Sacks, the breaching party, and the value Dr. Hall expected to receive. Dr. Hall, however, presented evidence that he suffered $1,220 in damages due to Sacks' failure to comply with the contract: he testified that he expected to receive $5,995 from Sacks under the contract, and it is undisputed that she only paid him $4,775. The jury awarded Dr. Hall $1,220 in actual damages. Thus, despite the erroneous definition of "loss of the benefit of the bargain," the jury awarded damages for Sacks' breach of the contract in an amount that is supported by the evidence presented. The erroneous instruction, therefore, did not probably cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Thota*, 366 S.W.3d at 687.

We hold that sufficient evidence supports the submission of a benefit-of-the-bargain damages question—the correct measure of damages for Dr. Hall's breach of contract claim—and the damages awarded by the jury and that the submission of an incorrect definition of "loss of the benefit of the bargain" did not probably cause an improper judgment and, thus, did not constitute harmful error. *See* TEX. R. APP. P. 44.1(a).

18

We overrule Sacks' third, fourth, and fifth issues.

## Satisfaction of Condition Precedent

In her sixth issue, Sacks contends that the trial court erred in awarding Dr. Hall contract damages because he failed to satisfy a contractual condition precedent to his recovery. Specifically, Sacks contends that Dr. Hall failed to satisfy the following condition precedent:

> INSURANCE ASSIGNMENT: In order for our office to accept insurance assignment, we must have your completed, signed insurance form BEFORE the braces are placed. If insurance has been assigned and is part of this contract but insurance payments cease for any reason, a new contract will need to be assigned for the remaining account balance.

Dr. Hall contends that Sacks never assigned her insurance benefits to him, Aetna never made payments on Sacks' behalf and therefore no payments ever ceased, and thus Dr. Hall was not required to enter into a new contract with Sacks to recover the remaining $1,220.

A condition precedent may be either a condition to the formation of a contract or a condition to an obligation to perform an existing agreement. *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)). A condition precedent to an obligation to perform is an act or event that occurs after the execution of a contract and that must occur before there is a right to immediate performance or before there is a breach of a

19

contractual duty. *Id.* at 691–92. No particular words are required to create a condition precedent, but terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance, usually connote an intent to create a condition rather than a promise. *Id.* at 692. When a contract does not clearly state that a provision is a condition precedent, we interpret the provision as creating a promise, not a condition. *Id.*; *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 64 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Because of their harshness and operation, conditions precedent are disfavored.").

Here, Sacks, Glenda Johnson, and Dr. Hall all testified that Sacks did not sign a form assigning her insurance benefits to Dr. Hall. Dr. Hall testified that he did not require Sacks to sign an insurance assignment before beginning treatment and that it is not unusual for his office to wait to complete that step until it has "established exactly what the insurance [benefits are] going to be." Sacks also testified that she never signed a form assigning benefits because Dr. Hall's office knew that her insurance plan with Aetna was a discount plan and, therefore, that "there wasn't going to be an assignment."

Even if compliance with the contractual provision stating that "a new contract will need to be signed for the remaining account balance" if insurance benefits have been assigned but payments subsequently cease is a condition

20

precedent to Dr. Hall's recovery of contract damages, a matter we need not decide, the parties' testimony in this case establishes that no insurance benefits were ever assigned by Sacks to Dr. Hall. Thus, in this case, the contractual provision never became operable and failure to comply with this provision does not bar Dr. Hall's recovery of contract damages. We therefore hold that the trial court properly entered judgment in favor of Dr. Hall on his breach of contract claim.

We overrule Sacks' sixth issue.

## Presentment of the Claim

In her first issue, Sacks contends that the trial court erred in awarding attorney's fees to Dr. Hall because he failed to plead or prove that he presented his breach of contract claim to Sacks and that she failed to tender performance.

As a general rule, each party to a dispute bears the cost of his own attorney, absent a contractual or statutory provision allowing for recovery of attorney's fees. *Gordon v. Leasman*, 365 S.W.3d 109, 116 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A party may recover reasonable attorney's fees if the claim is for breach of an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2015). Civil Practice and Remedies Code section 38.002 places a procedural requirement on the recovery of attorney's fees and provides that a claimant who is represented by an attorney "must present the claim to the opposing party" and "payment for the just amount owed must not have been tendered before

21

the expiration of the 30th day after the claim is presented." *Id.* § 38.002 (Vernon 2015). "The purpose of the presentment requirement is to allow the person against whom a claim is asserted an opportunity to pay within thirty days of receiving notice of the claim, without incurring an obligation for attorney's fees." *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied) (citing *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App.—Austin 1987, writ denied)). "In order to recover attorney's fees in a suit founded on a written contract under section 38.002, a plaintiff must plead and prove that presentment of a contract claim was made to the opposing party and he failed to tender performance." *Id.* at 516. The burden of proof is on the attorney's fees claimant to plead and prove presentment and failure to tender performance. *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983)). Generally, presentment is an issue of fact. *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Section 38.002 does not specify that a particular form of presentment is required. *Helping Hands Home Care, Inc.*, 393 S.W.3d at 516; *see Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("Even though no particular form of presentment is required, the party

22

making the claim *must allege in its pleadings that presentment was made* and that the party to which the presentment was made failed to tender performance.") (emphasis added). "The word 'present' has been defined to mean a demand or request for payment." *Canine, Inc. v. Golla*, 380 S.W.3d 189, 193 (Tex. App.—Dallas 2012, pet. denied); *Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 904 n.3 (Tex. App.—Austin 1991, no writ) ("Apparently, the supreme court has construed [presentment] to mean simply a demand or request for payment. In all events, the elements of presentment in § 38.002 must include at a minimum a demand or request for payment, irrespective of what else it might include.").

Neither the filing of a suit nor the allegation of a demand in the pleadings can, alone, constitute a presentment of a claim or a demand that the claim be paid. *Helping Hands Home Care, Inc.*, 393 S.W.3d at 516; *Panizo*, 938 S.W.2d at 168 ("[T]he act of filing suit is not by itself a demand within the terms of the statute."). An oral request for performance is sufficient to meet the presentment requirement. *See Gordon*, 365 S.W.3d at 116; *see also Belew v. Rector*, 202 S.W.3d 849, 857 (Tex. App.—Eastland 2006, no pet.) (stating that presentment may be done orally or in writing and may be accomplished with requests for admission, but that "[m]erely filing a breach of contract claim, however, is insufficient"). "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to

23

pay the claim." *Gordon*, 365 S.W.3d at 116 (quoting *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)); *see Carr*, 744 S.W.2d at 271 (holding that letter notifying opposing party of termination of contract and requesting release of letter of credit constituted proper presentment because "[t]he elements of notice, time and proof of amount are all present"). Nonpayment of a bill or invoice for thirty days satisfies the presentment requirement. *Gordon*, 365 S.W.3d at 116. We construe the statute liberally to promote its underlying purposes. TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (Vernon 2015); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 387 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Here, Dr. Hall pleaded the following with regard to his breach of contract claim:

> [Sacks] is liable to [Dr. Hall] pursuant to [Sacks'] breach of the parties' contract. Specifically, [Sacks] failed to adhere to the course of treatment suggested by [Dr. Hall]. [Sacks] agreed to the treatment and her failure to follow the treatment breached the parties' contract. In addition, [Sacks] failed to compensate [Dr. Hall] for the orthodontic services provided. [Sacks'] failure to pay [Dr. Hall] is a breach of the parties' contract.
>
> Therefore, [Dr. Hall] is entitled to damages for [Sacks'] breach, as well as reasonable attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

Although Dr. Hall pleaded that he was entitled to attorney's fees, he did not specifically plead that he had presented his breach of contract claim to Sacks, as he

24

was required to do to recover attorney's fees under Chapter 38. *See Panizo*, 938 S.W.2d at 168 (stating that attorney's fees claimant bears burden to plead and prove presentment); *Criton Corp.*, 809 S.W.2d at 358 (stating that party must allege in its pleadings that presentment was made).

Furthermore, even if he had properly pleaded that he presented his breach of contract claim to Sacks, Dr. Hall failed to bring forth evidence of presentment. He argues that he satisfied the presentment requirement because Sacks testified at trial that, on January 24, 2007, Dr. Hall told her that he "refused to treat [her] any longer, unless [she] paid him more money" and because the record contained evidence that Sacks received a copy of Dr. Hall's office's internal ledger, one page of which reflected that she had an outstanding commitment of $1,220 to Dr. Hall. We hold that neither of these pieces of evidence satisfies the presentment requirement in this case.

Sacks testified that when she spoke with Dr. Hall in January 2007, he first offered to complete the orthodontic services that she needed at no additional charge to her, but then he "refused to treat [her] any longer, unless [she] paid him more money." Neither party elicited further information concerning this statement that Dr. Hall made, such as the amount of money that he requested from Sacks to continue treatment. *See Carr*, 744 S.W.2d at 271 (holding that letter to opposing party satisfied presentment requirement because "[t]he elements of notice, time and

proof of amount are all present"). Sacks testified that when she spoke with Glenda Johnson on January 18, 2007, Johnson informed her that Aetna had not paid the $1,220 that it had originally promised to pay, but Sacks stated that instead of asking Sacks to pay $1,220 at that time, Johnson merely requested that Sacks contact Aetna to see if she could resolve the matter. Sacks testified that neither Dr. Hall nor Johnson ever said, "You now have to pay us $1,220," and Dr. Hall agreed that he never sent Sacks a bill or a collection letter for the $1,220. Dr. Hall also testified that he would not have brought suit against Sacks had she not sued him first.

The ledger entry that Dr. Hall points to as evidence that he presented his claim to Sacks was included with Sacks' records that Dr. Hall forwarded to her upon her request in March 2007. This document, dated March 20, 2007, and entitled "Ledger—Deana Pollard/Denna Pollard – Texas Southern U," listed the party responsible for payment as Sacks with the notation "Texas Southern University/Aetna Healthcare," stated that the "Original contract amount" was $1,220, the "Remaining commitment" was $1,220, and the "Amount Due Now" was $459. The document stated that it was an "accounts receivable" ledger, and it reflected monthly charges beginning June 7, 2006, and continuing until March 1, 2007, for a total amount due of $459.

26

This ledger is a document intended for internal use by Dr. Hall's office reflecting Sacks' account history, and Dr. Hall only mailed it to Sacks because it was part of her records that she had requested. The ledger is not a bill or an invoice, and it does not contain a demand that Sacks immediately pay $1,220 to Dr. Hall; instead, it states that the "Amount Due Now" is $459. *See Gordon*, 365 S.W.3d at 116 (holding that, to prove presentment, "a party [must] show that its assertion of a debt or claim and a request for compliance was made to the opposing party"); *see also Helping Hands Home Care, Inc.*, 393 S.W.3d at 516–17 (holding that agreed order for temporary injunction and agreed extension of temporary restraining order do not meet presentment requirement because neither document "says anything about the proof of the amount owing" and neither document "contains a specific demand from [the defendant] for payment"). The purpose of the presentment requirement is to "allow the person against whom a claim is asserted an opportunity to pay within thirty days of receiving notice of the claim, without incurring an obligation for attorney's fees." *Helping Hands Home Care, Inc.*, 393 S.W.3d at 517. The ledger does not constitute evidence that Dr. Halls was asserting against Sacks a presently-due claim for $1,220, such that she needed to pay Dr. Hall that amount within thirty days. Moreover, the record also contains evidence that, at the point in time when Dr. Hall mailed Sacks her records, he had already offered her a partial refund, and shortly thereafter, in April 2007, he wrote

27

a letter to the Greater Houston Dental Society in response to a complaint initiated by Sacks and stated that he had offered her a refund "of approximately 40% of the treatment fee, pro-rated on the time, treatment, consultations and expenses" and that Sacks currently had a zero balance with his office.

As the party seeking attorney's fees, Dr. Hall bore the burden to plead and prove that he presented his breach of contract claim to Sacks. *See Panizo*, 938 S.W.2d at 168 (stating that attorney's fees claimant bears burden to plead and prove presentment). Dr. Hall's assertion of his breach of contract counterclaim, by itself, is insufficient to constitute presentment. *See Helping Hands Home Care, Inc.*, 393 S.W.3d at 516 ("[N]either the filing of a suit, nor the allegation of a demand in the pleadings can, alone, constitute a presentment of a claim or a demand that the claim be paid . . . ."). Further, neither Dr. Hall's alleged statement that he "refused to treat [Sacks] any longer, unless [she] paid him more money" nor the ledger entry included within the records sent by Dr. Hall's office to Sacks constitute a demand that she pay Dr. Hall $1,220. We hold that the trial court erred in concluding that Dr. Hall properly pleaded and proved that he presented his breach of contract claim to Sacks. We therefore modify the judgment of the trial court to delete the attorney's fees award in favor of Dr. Hall. *See Jim Howe Homes, Inc.*, 818 S.W.2d at 904 ("The record is devoid of *any* evidence of

28

presentment.    Therefore, Rogers is not entitled to recover attorney's fees.")
(emphasis in original).

We sustain Sacks' first issue.[6]

## Conclusion

We modify the judgment of the trial court to delete the award of attorney's

fees in favor of Dr. Hall.  We affirm the judgment as modified.



Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Justice Massengale, concurring.

---

[6] Because we hold that Dr. Hall was not entitled to an award of attorney's fees due to his failure to plead and prove presentment of his claim to Sacks, we need not address Sacks' second issue—whether the trial court erred in awarding attorney's fees to Dr. Hall due to his failure to segregate recoverable and unrecoverable attorney's fees.

29