**Opinion issued June 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00050-CV

———————————

### AUSTEX TREE SERVICE, INC., Appellant

### V.

### UNIFIRST HOLDINGS, INC., Appellee

---

**On Appeal from the County Court at Law No 1**
**Travis County, Texas[1]**
**Trial Court Case No. C-1-CV-16-009675**

---

## MEMORANDUM OPINION

Appellant, Austex Tree Service, Inc. ("Austex"), challenges the trial court's

judgment, entered after a bench trial, in favor of appellee, UniFirst Holdings, Inc.

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 18–9010 (Tex. Jan. 12, 2018); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases).

("UniFirst"), in UniFirst's suit on a sworn account against Austex. In four issues, Austex contends that the trial court erred in awarding UniFirst liquidated damages, pre-judgment interest, reasonable trial attorney's fees, and unconditional appellate attorney's fees.

We modify the trial court's judgment and affirm as modified.

## Background

UniFirst sued Austex on a sworn account. In its amended petition, UniFirst alleged that it sold Austex "one or more items of goods, wares, merchandise, or services" under an agreement between the parties. UniFirst also alleged that Austex defaulted in making its required payments to UniFirst and brought suit against Austex for breach of contract, unjust enrichment, and fraud. UniFirst sought damages of $21,214.39, the principal balance owed on the account. This amount included liquidated damages of $13,873.83, as provided under the parties' agreement. Unifirst also requested an award of pre-judgment interest, reasonable attorney's fees, costs of court, and post-judgment interest.

UniFirst originally obtained a default judgment against Austex. But the parties entered into an agreed order to set aside the default judgment and reinstate the case after Austex filed a bill of review.

Austex then filed a general denial, asserting various affirmative defenses, including that the liquidated-damages provision in the parties' agreement constituted an unlawful penalty.

At trial, Michael Ron Ferguson, the general manager for UniFirst in Austin, Texas, testified that UniFirst provides uniform rental services for its clients and weekly laundering services for those uniforms. Ferguson also testified that UniFirst entered into a customer service agreement to perform uniform rental and laundering services for Austex. Their agreement was entered into evidence without objection and included, among other provisions, a sixty-month term, and the following liquidated-damages provision:

> If Customer breaches or terminates this Agreement before the expiration date for any reason (other than for UniFirst's failure under the performance guarantees described above), Customer will pay UniFirst, as liquidated damages and not as a penalty (the parties acknowledging that actual damages would be difficult to calculate with reasonable certainty) an amount equal to 50 percent of the average weekly amounts invoiced in the preceding 26 weeks, multiplied by the number of weeks remaining in the current term. These damages will be in addition to all other obligations or amounts owed by Customer to UniFirst, including the return of Standard Merchandise or payment of replacement charges, and the purchase of any Non-Standard Merchandise items as set forth herein.

Ferguson testified that UniFirst used this formula to determine that Austex owed it $13,873.83 in liquidated damages—except that UniFirst only had invoices from twenty weeks, instead of twenty-six weeks, to use for its average due to Austex's premature termination of the parties' agreement. Ferguson also testified that

3

UniFirst sought damages for unreturned uniforms in the amount of $4,233.77 and for "past due receivables" for services rendered that were never paid in the amount of $3,106.79.

Regarding the liquidated-damages provision, Ferguson testified that if he had to calculate UniFirst's actual damages, the amount would easily be "equal to or more" than the amount resulting from the liquidated-damages calculation acknowledged by the parties under the agreement. He explained that an account becomes more profitable later in its term due to the expenses associated with starting up a new account, such as buying new uniforms and other start-up expenses, which are "front-loaded."

Regarding UniFirst's record-keeping of invoiced amounts and uniform inventory, Ferguson testified that UniFirst keeps accurate records tracking how many uniforms are retained at any given time by its customers. So, if a client fails to pay or cancels service, Ferguson would be able to ascertain the amount owed and the replacement cost for any unreturned uniforms from his records.

Bill Malone, Jr., UniFirst's attorney, testified that the following attorney's fees in this case were reasonable and necessary: $7,071.46 for work performed leading up to the trial court's judgment, an additional $8,000.00 if an appeal was taken to an intermediary court of appeals, an additional $4,000.00 if there was a petition for review filed in the Texas Supreme Court, and an additional $4,000.00

if a petition for review was granted in the Texas Supreme Court. In support of these proposed fees, Malone testified that he (1) had been licensed to practice law in Texas since 1981, primarily practicing in Travis County and surrounding areas; (2) was familiar with the usual and customary attorney's fees charged by attorneys for work of this nature of "collection-type" of litigation; (3) provided the following legal services: evaluating the claims, drafting the petition, obtaining a default judgment, pursuing post-default-judgment collection procedures, negotiating reinstatement of the case after Austex filed a bill of review, obtaining discovery, preparing for trial, and trial of the case; (4) spent "a minimum of seven hours" on the case, "not includ[ing] the post-judgment procedures that were taken," for litigation, trial preparation, and conducting the trial; and (5) he typically charges $300.00 hour for his time, although he had a contingency-fee arrangement for "one-third of what [was] collected" in this case.

The trial court took the case under advisement and ultimately entered a judgment in favor of UniFirst on August 31, 2017, as follows:

> The Court, after considering the pleadings, evidence, and argument of counsel, finds that Defendant Austex . . . is indebted to [UniFirst] in the sum of $21,214.39, plus legal interest of $10,064.34, and that [UniFirst] should recover a reasonable attorney's fee, which the Court finds to be $7,071.46.
>
> . . . .
>
> It is further ORDERED that [UniFirst] recover from [Austex] $8,000.00 if an appeal to the Court of Appeals is made, $4,000.00 if a

5

petition for review to the Texas Supreme Court is made, and $4,000.00 if a petition for review is granted by the Texas Supreme Court.

Austex filed a motion for new trial, which was denied by operation of law.

**Standard of Review**

Where findings of fact and conclusions of law are not requested or filed after a non-jury trial, we imply that the trial court made all findings necessary to support its judgment. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). But when the record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). We apply the same standard of review as that applied in the review of jury findings. *Robinson,* 768 S.W.2d at 281. The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

We will sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In

6

conducting a legal sufficiency review, a "court must consider evidence in the light most favorable to the verdict[] and indulge every reasonable inference that would support it." *Id.* at 822. If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *City of Keller*, 168 S.W.3d at 822; *see also King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003). "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *City of Keller,* 168 S.W.3d at 822.

In conducting a factual-sufficiency review, we must consider, weigh, and examine all of the evidence that supports or contradicts the trier-of-fact's determination. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *London v. London*, 192 S.W.3d 6, 14–15 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). We may set aside the judgment only if the evidence that supports the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 175 (Tex. 1986). "In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part

of their testimony, and resolves any conflicts or inconsistencies in the testimony." *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). An appellate court "may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence." *Id.*

## Liquidated Damages

In its first issue, Austex argues that the trial court erred in awarding UniFirst liquidated damages because "the liquidated[-]damages clause of [the parties'] Customer Service Agreement" acts as an "unenforceable penalty."

Although a court may have to resolve certain factual issues at the outset, the ultimate issue of enforceability of a liquidated-damages provision is a question of law for the court to decide. *FPL Energy, LLC v. TXU Portfolio Mgmnt. Co.*, 426 S.W.3d 59, 70 (Tex. 2014). "The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions." *Id.* As such, a court must make the following two "indispensable" findings to enforce a contractual-damages provision: (1) "the harm caused by the breach is incapable or difficult of estimation" and (2) "the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). Both prongs of this test are evaluated "from the perspective of the parties at the time of

contracting." *FLP Energy*, 426 S.W.3d at 69–70. The party asserting that a liquidated-damages provision is unenforceable bears the burden of proof. *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

The liquidated-damages provision in this case provides:

> If Customer breaches or terminates this Agreement before the expiration date for any reason (other than for UniFirst's failure under the performance guarantees described above), Customer will pay UniFirst, as liquidated damages and not as a penalty (the parties acknowledging that actual damages would be difficult to calculate with reasonable certainty) an amount equal to 50 percent of the average weekly amounts invoiced in the preceding 26 weeks, multiplied by the number of weeks remaining in the current term. These damages will be in addition to all other obligations or amounts owed by Customer to UniFirst, including the return of Standard Merchandise or payment of replacement charges, and the purchase of any Non-Standard Merchandise items as set forth herein.

## A. Harm incapable or difficult of estimation

In a portion of its first issue, Austex asserts that UniFirst's damages in the event of a breach "were not incapable or difficult of estimation" since Ferguson, UniFirst's general manager, testified at trial that UniFirst would "know exactly what its actual damages were if one of its clients cancelled or failed to pay under its services contract." This is a mischaracterization of Ferguson's testimony. Instead, at trial, Austex asked Ferguson the following question:

> And if you - - if a client were to not pay you or to cancel service, would you be able to indicate in your records how much that client owes you and how much the replacement cost would be for the

9

uniforms that they still have in their possession that they have not returned?

Ferguson responded, "Yes, sir." Ferguson's testimony immediately preceding this exchange concerned the quality of UniFirst's record-keeping with respect to invoiced amounts and uniform inventory. No rational interpretation of Ferguson's testimony could lead to the conclusion that Ferguson, or anyone else at UniFirst, could predict the amounts that would have been invoiced to Austex in the future had Austex not prematurely terminated its contract with UniFirst. Invoices are issued weekly, and the amount invoiced varied each week based on the number of uniforms requiring servicing.

To the contrary, Ferguson separately explained how he calculated liquidated damages in the amount of $13,873.83 using the formula provided in the liquidated-damages provision in the parties' agreement. When asked what the actual damages would be in lieu of the liquidated damages provided for in the agreement and "in the event [he was] obligated to go and try to calculate the actual damages," Ferguson explained that UniFirst's actual damages for the remaining weeks in the contractual term would be "equal to or more than 50 percent easily because the loss of revenue for the remainder of the agreement would have been 100 percent, not just 50 percent." The fifty percent reduction accounts for "certain costs in servicing the account" such as paying "route salesmen," washing the uniforms, and processing the uniforms each week. He further explained that the

10

profit stream on any given account fluctuates over time in that many account expenses are "front-loaded" due to the purchase of new uniforms and other expenses necessary to begin servicing an account. As such, UniFirst's profits tend to increase further into a contract's term, which is why Ferguson testified that its actual damages probably exceed the liquidated damages provided for in the parties' agreement.

Austex has not established that the liquidated-damages provision in this case fails to satisfy the requirement that the damages resulting from a breach, at the time of contracting, were uncertain and difficult to determine. In this case, to forecast the actual damages to UniFirst as a result of Austex's termination of its sixty-month contract, twenty-months into its term, "would be fraught with uncertainty." *Murphy v. Cintas Corp.*, 923 S.W.2d 663, 666 (Tex. App.—Tyler 1996, writ denied). Accordingly, we concluded that there is sufficient evidence in the record to support an implied finding from the trial court that the harm caused by the breach, at the time of contracting, was incapable or difficult of estimation. *See BMC Software*, 83 S.W.3d at 795 (explaining where no findings of fact or conclusions of law we imply that trial court made all findings necessary to support its judgment).

### B. Amount reasonable forecast of just compensation

In the remaining portion of its first issue, Austex argues that the

liquidated-damages provision is an unenforceable penalty because it "was not a reasonable forecast of just compensation."

When a defendant makes such an assertion, it may be required to prove the amount of actual damages before a court can classify such a provision as an unenforceable penalty. *See*, *e.g.*, *FPL Energy*, 426 S.W.3d at 70 (citing *Phillips*, 820 S.W.2d at 788). Here, Austex offered no evidence of, or otherwise attempted to prove, UniFirst's actual damages at trial. Instead, it argues that the liquidated-damages provision is a penalty because it does not attempt to "forecast actual damages," but impermissibly "calls for them to be determined and then multiplied." This assertion is contrary to a plain reading of the liquidated-damages provision at issue in the instant case, which instead averages past invoiced amounts, reduces that averaged amount by fifty percent, and then multiples that reduced averaged amount by the number of weeks remaining in the contract's term. *Cf. Phillips*, 820 S.W.2d at 789 ("A contractual provision like the one here by which one party agrees to pay the other some multiple of actual damages for breach of the agreement does not meet either part of the legal test for an enforceable liquidated[-]damages provision" because it does not attempt to forecast, but multiply actual damages). It does not require "one party [to] agree[] to pay the other some multiple of actual damages for breach of the agreement," which would be an unenforceable penalty on the face of the agreement. *See id.*

12

Austex further asserts that the liquidated-damages provision is not a reasonable forecast of damages because it is "disproportionate to actual damages" and was awarded in addition to actual damages. Austex is correct in that liquidated damages cannot be enforced if they are disproportionate to actual damages or awarded in addition to actual damages. *See Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 438 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[L]iquidated damages must not be disproportionate to actual damages. If the liquidated damages are shown to be disproportionate to the actual damages then the liquidated damages can be declared a penalty."). But Austex's argument incorrectly assumes that UniFirst's actual damages in this case are limited to "replacement costs for its unreturned uniforms in the amount of $4,344.77" and "'past due receivables' for services rendered in the amount of $3,106.79, for a total of $7,340.56." Austex seems to assert that UniFirst may either receive those or liquidated damages, but not both.

Instead, an injured party in a breach-of-contract action may recover damages for its expectation interests in a contract, i.e., the "benefit of the bargain" had the contract been performed. *See Sacks v. Hall*, 481 S.W.3d 238, 246 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("The purpose of the benefit-of-the-bargain measure of damages is to restore the injured party to the economic position it would have been in had the contract been fully performed."); *see also Bowen v.*

13

*Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("With respect to damages in breach-of-contract cases, the general rule is that the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed." (internal quotations omitted)). Austex terminated the parties' agreement only twenty months into the sixty-month term. So, the amounts awarded for past-due receivables and unreturned uniforms, without also compensating UniFirst for Austex's failure to perform the remaining weeks in the term of the agreement, would not restore UniFirst to the same economic position it would have been in had the contract been fully performed. *See Sacks*, 481 S.W.3d at 246. The liquidated-damages provision in this case is a means for compensating UniFirst for the lost benefit of Austex performing its obligations during the remaining weeks of the term of the parties' agreement. *Id.*

On appeal, Austex does not assert that it was excused from performance of its obligations under the agreement. And, as previously mentioned, Austex did not prove the amount it contends was UniFirst's actual damages to support its contention that the liquidated damages are not an approximation of the stipulated sum. *See Phillips*, 820 S.W.2d at 788 (explaining one way party can "show that a liquidated[-]damages provision is unreasonable" is by showing that "the actual damages incurred were less than the amount contracted for," which requires that party "to prove what those actual damages were"). Moreover, Ferguson testified

14

that the liquidated damages were, in all probability, less than UniFirst's actual damages resulting from Austex's breach. And the liquidated-damages provision specifically provides that "[t]hese damages will be in addition to all other obligations or amounts owed by Customer to UniFirst, including the return of Standard Merchandise or payment of replacement charges, and the purchase of any Non-Standard Merchandise items as set forth herein."

For these reasons, we conclude that Austex has failed to prove that the liquidated-damages provision does not provide a reasonable estimate of the harm that would be incurred and that there is sufficient evidence in the record to support an implied finding from the trial court that the liquidated-damages provision in this case is a "reasonable forecast of just compensation." *Phillips*, 820 S.W.2d at 788; *see also BMC Software*, 83 S.W.3d at 795 (explaining we imply that trial court made all findings necessary to support its judgment where no findings of fact or conclusions of law).

Because there is sufficient evidence to support implied findings from the trial court that the liquidated-damages provision addressed damages incapable or difficult of estimation and that the amount of liquidated damages called for is a reasonable forecast of just compensation, we hold that the trial court did not err in awarding UniFirst liquidated damages pursuant to the liquidated-damage provision in the parties' agreement. Our holding in this case is consistent with those from

other courts which have evaluated similar liquidated-damages provisions. *See Atrium Med. Ctr., LP v. Hous. Red C LLC*, 546 S.W.3d 305, 315–316 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (upholding liquidated-damages provision for forty percent of current invoice multiplied by number of weeks remaining in term); *see also Murphy v. Cintas Corp.*, 923 S.W.2d 663, 666 (Tex. App.—Tyler 1996, writ denied) (upholding liquidated-damages provision for fifty percent of weekly fees for remainder of sixty–month term, noting "[t]o forecast the actual damages to Cintas as a result of Murphy's termination of the contract sixty months in advance would be fraught with uncertainty"); *Oetting v. Flake Uniform & Linen Serv., Inc.*, 553 S.W.2d 793, 797–98 (Tex. Civ. App.—Fort Worth 1977, no writ) (focusing on anticipated profit margin, court held eighty-five percent cancellation charge reasonable).

We overrule Austex's first issue.

## Pre-Judgment Interest

In its second issue, Austex argues that the trial court erred in awarding UniFirst pre-judgment interest because "it did not request [it] and made no effort to prove [it] up at trial."

"Pre[-]judgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*,

16

466 S.W.3d 143, 153 (Tex. 2015). There are two enabling statutes in the Texas Finance Code relevant to pre-judgment interest, that are not applicable here. One applies to claims for wrongful death, personal injury, or property damage. *See* TEX. FIN. CODE ANN. § 304.101. And the other applies to condemnation cases. *See id*. § 304.201. When no statute governs an award of pre-judgment interest, as in this case, pre-judgment interest may be awarded under general principles of equity. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining pre-judgment interest in breach-of-contract case governed by equitable principles because no applicable statute). When general principles of equity govern an award of pre-judgment interest, we review the trial court's decision concerning pre-judgment interest for an abuse of discretion. *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Generally, a plaintiff must plead for pre-judgment interest sought in equity as an element of damages. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.). But entitlement to pre-judgment interest does not require any specific and independent evidentiary proof at trial, unless there is a fact issue regarding the date of accrual. *See Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 26 (Tex. 1987) (holding trial court erred in denying post-verdict amendment to

17

plead pre-judgment interest because it requires no evidentiary proof at trial and cannot surprise or prejudice opposing party); *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 479 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("In Texas, pre[-]judgment interest accrues beginning either on the 180th day after the defendant received written notice of the claim or on the date the suit was filed, whichever occurs first."). And once a trial court determines that a plaintiff is entitled to pre-judgment interest, it has no discretion in determining the amount of pre-judgment interest to award, which is dictated by statute. *See Acco Constructors, Inc. v. Nat'l Steel Prods. Co.*, 733 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1987, no writ.) (explaining trial court errs in awarding pre-judgment interest at rate that varies from statutory amount).

Here, UniFirst's live pleading at the time of trial specifically requested pre-judgment interest. UniFirst was not required to satisfy any sort of evidentiary burden at trial to establish its entitlement to receive an award of pre-judgment interest. *See*, *e.g.*, *Benavidez*, 726 S.W.2d at 26 (holding trial court erred in denying post-verdict amendment to plead pre-judgment interest because it requires no evidentiary proof at trial and cannot surprise or prejudice opposing party). And Austex does not provide argument as to how the amount of pre-judgment interest awarded by the trial court was incorrect. To the extent that its statements that "it remains a mystery to Appellant as to how this interest was calculated" and that the

18

pre-judgment interest award could have "possibly" accrued on the award of attorney's fees, could be construed as a challenge to the trial court's calculation of pre-judgment interest, that argument is insufficiently briefed for our consideration. *See* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) (explaining were we to identify possible trial court error, search record for facts favorable to party's position, or perform legal research that might support party's contentions "we would be abandoning our role as judges and become an advocate for that party").

Accordingly, we hold that the trial court did not err in awarding UniFirst pre-judgment interest.

We overrule Austex's second issue.

### Attorney's Fees

In its third issue, Austex argues that the trial court erred in awarding UniFirst attorney's fees because the evidence was insufficient to support the trial court's award of attorney's fees through trial in the amount of $7,071.46. Austex asserts that the contingency-fee agreement between UniFirst and its attorney "does not mean that the fee arrangement is in and of itself reasonable for purposes of shifting the fee to the defendant."

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Evidentiary

19

sufficiency issues are not independent grounds under this standard but are relevant factors in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Halsey v. Halter*, 486 S.W.3d 184, 187 (Tex. App.—Dallas 2016, no pet.). This hybrid analysis involves a two-pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) if so, whether the trial court erred in its application of that discretion. *City of Hous. v. Kallinen*, 516 S.W.3d 617, 626 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

An attorney's fees award must be supported by evidence that the fees are reasonable and necessary. *Dernick Res., Inc. v. Wilstein*, 471 S.W.3d 468, 490 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Whether attorney's fees are reasonable is ordinarily a decision left to the fact finder. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). A trial court determines the reasonableness of an attorney's fee award by considering the following eight non-exclusive factors enumerated by the Texas Supreme Court: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the attorney; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed

20

by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997); *see Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 512–13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

*Arthur Anderson* also directs that a plaintiff may not shift an "entire contingent fee to the defendant without consideration of the factors required by the [Texas] Rules of Professional Conduct." 945 S.W.2d at 818. Thus, a contingency-fee agreement should be considered by the fact finder, but the fact finder "must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought." *Id.* at 819. Even so, a trial court is not required to receive evidence on each *Arthur Anderson* factor. *See Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied). The trial court can also examine the "entire record and . . . view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge." *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 689–90 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Jarvis*, 289 S.W.3d at 318.

In this case, the trial court's award of attorney's fees is not supported solely by evidence of the one-third contingency-fee agreement. In addition to testifying to the contingency-fee arrangement with UniFirst, Malone testified that he had been practicing law in and around Travis County, Texas since 1981, that he was familiar with the usual and customary attorney's fees charged by attorneys for work in this collection-type of litigation, and that the amount of $7,071.46 in attorney's fees for representation through judgment in this case was reasonable and customary. *See Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) ("It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award.").

Austex argues that the actual attorney's fees "proven up" by UniFirst at trial "amounted to only about $2,100.00." Austex does not explain how it reached this amount, but it is presumably based on Malone's testimony that he "spent a minimum of seven hours" on the case and typically charges $300.00 per hour when he is not engaged under a contingency-fee arrangement. But Malone did not testify that he *only* spent seven hours on the case. Instead, his testimony was that these seven hours did not include the default judgment and post-judgment procedures that were taken before the case was reinstated and proceeded to trial. He also testified more specifically regarding the type of work that he performed in

the case by providing the following legal services: evaluating the claims, drafting the petition, obtaining a default judgment, pursuing post-default-judgment collection procedures, negotiating reinstatement of the case after Austex filed a bill of review, obtaining discovery, preparing for trial, and trial of the case.

Accordingly, we hold that the trial court had enough competent evidence upon which to exercise its discretion and did not err in awarding UniFirst attorney's fees through trial in this case in the amount of $7,071.46.

We overrule Austex's third issue.

### "Punitive Fees" for Appeal

In its fourth issue, Austex argues that the trial court erred in awarding UniFirst appellate attorney's fees because the award was "not conditioned on the lack of success of [Austex's] appeal, but [was] rather punitive in nature." Austex requests that we modify the trial court's judgment. UniFirst agrees that the judgment contains error in this regard and that it should be reformed to condition the award of appellate attorney's fees on an unsuccessful appeal by Austex.

A trial court may not penalize a party for taking a successful appeal. *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Sipco Servs. Marine v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 607 (Tex. App.—Houston [1st Dist.] 1993, no writ). As such, an unconditional award of appellate attorney's fees is improper, and the trial court must condition any award of

23

appellate attorney's fees on a party's unsuccessful appeal. *Ansell Healthcare Prods., Inc. v. United Med.*, 355 S.W.3d 736, 745 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Hoefker v. Elgohary*, 248 S.W.3d 326, 322 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The judgment in this case awards UniFirst "$8,000.00 if an appeal to the Court of Appeals is made, $4,000.00 if a petition for review to the Texas Supreme Court is made, and $4,000.00 if a petition for review is granted by the Texas Supreme Court." It is not conditioned upon a successful appeal and is, therefore, improper. *See*, *e.g.*, *Keith*, 221 S.W.3d at 171. Since an unconditional award of appellate attorney's fees does not require reversal, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Ansell*, 355 S.W.3d at 745; *Hoefker*, 248 S.W.3d at 322.

Accordingly, we hold that the trial court erred in awarding UniFirst unconditional appellate attorney's fees and we modify the trial court's judgment as follows:

> $8,000.00 if an appeal to the Court of Appeals is made *unless Austex prevails in the court of appeals and petition for review is not granted by the Texas Supreme Court or unless Austex prevails in the Texas Supreme Court*;
>
> $4,000.00 if a petition for review to the Texas Supreme Court is made *unless Austex prevails in the Texas Supreme Court*;

$4,000.00 if a petition for review is granted by the Texas Supreme Court *unless Austex prevails in the Texas Supreme Court.*

(Emphasis added.)

We sustain Austex's fourth issue.

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.