**Opinion issued August 21, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-23-00862-CV

———————————————

**SCOTT EQUIPMENT, LLC, Appellant**

**V.**

**SYED RAZA AKA AND BSPA SYED ABBAS RAZA, SYED A. RAZA AND S.A. RAZA DBA HOLIDAY INN & SUITES WILLOWBROOK, HOLIDAY INN WILLOWBROOK, AND MOM'S WASHATERIA, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1183584**

---

## MEMORANDUM OPINION

This breach of contract case arises from Scott Equipment, LLC's failure to receive payment for commercial laundry equipment that was installed in a newly built hotel. Syed Raza worked for a construction company building the hotel, and he

signed a written contract for the sale, delivery, and installation of the equipment. Scott Equipment sued Raza individually to recover payment. Raza asserted that he was not individually liable under the contract because he ordered the equipment on behalf of the hotel and disclosed to Scott Equipment that he was acting on behalf of the hotel. The trial court rendered a final take-nothing judgment after a bench trial. The court also signed findings of fact and conclusions of law.

In four issues on appeal, Scott Equipment argues that: (1) the trial court erred by rendering a take-nothing judgment on the breach of contract claim because Raza signed the contract individually without identifying a principal that was a business entity; (2) Raza waived his right to deny the allegation that he was doing business as Holiday Inn Willowbrook because he did not file a verified denial; (3) the evidence is insufficient to support all the trial court's findings of fact; and (4) the trial court erred by rendering judgment against Scott Equipment on its claims for breach of contract and attorney's fees. We affirm.

## Background

In November 2018, Raza worked for a construction company that was building Holiday Inn Willowbrook, a hotel in northwest Houston.[1] As part of his job, Raza ordered nearly $47,000 worth of commercial laundry washers and dryers from

---

[1]    Various pleadings and documents admitted at trial identify the hotel as Holiday Inn Willowbrook and Holiday Inn & Suites Willowbrook. The parties do not distinguish between these entities on appeal, and we presume they are the same hotel.

Scott Equipment to be delivered to and installed at the hotel. Raza signed a contract, which listed both Holiday Inn Willowbrook and Raza in the "Quote To" and "Ship To" portions of the contract. Scott Equipment delivered the equipment and installed it at the hotel.

At the time of the sale, Scott Martin owned Scott Equipment.[2] The day after Raza signed the contract, Scott Equipment sent Raza an invoice at the address of the construction company where he worked. Raza testified at trial that he disputed the invoice with Martin and asked, "[W]hy is this billed to me?" Martin then "fixed the owner," and Raza did not receive further invoices. Sometime after the sale, Martin sold Scott Equipment to Ryan Smith. Scott Equipment then sent demand letters to both Raza and Holiday Inn Willowbrook for payment under the contract. Scott Equipment did not receive payment.

Scott Equipment sued Raza seeking damages on the unpaid contract, interest, and attorney's fees. The live petition named Raza "individually, . . . who, at the time of the obligation made the basis of this lawsuit was incurred was doing business as Holiday Inn & Suites Willowbrook, Holiday Inn Willowbrook and Mom's Washateria." The petition asserted a cause of action for suit on a sworn account and

---

[2] When Martin owned Scott Equipment, the company was organized as a corporation. Sometime after the transaction at issue in this appeal, Scott Equipment was reorganized as an LLC. This distinction is not relevant to our analysis, and the opinion does not distinguish between the two entities.

alternative causes of action for unjust enrichment, quantum meruit, and breach of contract. For reasons that are unclear from the record, the case was tried only on the breach of contract and quantum meruit claims. On appeal, Scott Equipment characterizes its lawsuit as asserting only a breach of contract claim, and our analysis adopts this characterization.

Raza filed a verified answer generally denying the allegations and asserting several affirmative defenses. Relevant here, the defenses included: (1) other responsible parties—"the incident in question was proximately caused or solely proximately caused by the negligent and/or wrongful conduct of third-parties outside the control of [Raza], namely Holiday Inn & Suites Willowbrook"; (2) improper party—Scott Equipment "only entered a[n] agreement to deliver the referenced goods with Holiday Inn & Suites Willowbrook"; and (3) improper capacity.

Raza attached a verification to his live answer. In it, he stated that he was a manager of a construction company called New Classic Investments, Inc. d/b/a Classic Construction Company, which was hired by Holiday Inn Willowbrook. Raza identified the owner of the hotel as Noman Qamar. Raza denied that he was an owner, manager, or officer of Holiday Inn Willowbrook. He stated that Scott Equipment's own invoices and an internal memorandum listed Holiday Inn Willowbrook as the customer to the equipment transaction. Raza stated that he is not

4

a proper party to the lawsuit, he did not agree to pay for the washers and dryers, and he did not receive them.

At a bench trial, the parties' central dispute was whether Raza was individually liable under the contract or whether he acted as an agent of Holiday Inn Willowbrook. The trial court admitted into evidence several documents concerning the disputed transaction, including the contract, sales orders, an invoice, other internal documents maintained by Scott Equipment, a bill of lading, a text message from Raza, and demand letters.

The contract reflects that Raza signed it without indicating that he was doing so in a representative capacity. But the contract listed both Holiday Inn Willowbrook and Raza as "Quote To" and "Ship To" parties. Several unsigned sales orders and an invoice listed Raza alone as the "Buyer" and "Bill To" person. But other internal documents listed only Holiday Inn Willowbrook as Scott Equipment's "Customer," and the bill of lading was "[c]onsigned to Holiday Inn." The invoice was addressed to Raza at the construction company's address. In the text message, Raza gave a Scott Equipment representative delivery instructions and a choice between two proposals of equipment. The demand letters requesting payment for the equipment were sent to Raza and Holiday Inn & Suites Willowbrook.

Scott Equipment called two witnesses to testify. Ryan Smith testified first. He did not introduce himself or testify about his connection to Scott Equipment or the

5

transaction at issue. Raza later testified, however, that sometime after the transaction, Smith bought Scott Equipment from Scott Martin.

Smith testified about the contents of the documents admitted at trial. He testified that Raza ordered the laundry equipment and signed the contract, Scott Equipment delivered the equipment to Holiday Inn Willowbrook and installed it there, and no one rejected or paid for the equipment.

Smith also testified that Raza agreed to be personally liable under the contract. But Smith conceded on cross-examination that he had no personal knowledge of the transaction, never spoke to Raza, and never contacted Holiday Inn Willowbrook or its owner Qamar to inquire about payment for the equipment. Rather, Smith testified that all his knowledge about the transaction was from the documents themselves and conversations with an unidentified salesman who did not testify.

When Raza asked Smith about Scott Equipment documents identifying Holiday Inn Willowbrook as the customer to the transaction, Scott Equipment objected on the ground that Raza had waived any dispute about whether he does business as Holiday Inn Willowbrook because he did not file a verified pleading denying the fact. In response, Raza's counsel read the affidavit attached to Raza's live verified answer, and the trial court overruled the objection.

Smith also testified that Scott Equipment had installed washers and dryers in hotels other than Holiday Inn Willowbrook. He said it is not uncommon for a

6

construction company and an equipment vendor to coordinate with each other concerning the order and delivery of necessary equipment for a given project. He also said that Scott Equipment "knew that [Raza] was employed by [the construction company], but he took it on personally."

Scott Equipment then called Raza to testify. Raza did not dispute that he signed the contract in his name without indicating he was doing so in a representative capacity. When asked whether Holiday Inn Willowbrook is an assumed name, Raza denied any knowledge of the legal organization of the hotel. Raza testified that the hotel is "a business where [he] work[ed] as a contractor." He testified that the contract was between Scott Equipment and the hotel, and Martin—who owned Scott Equipment at the time of the transaction—knew who owned the hotel. Raza identified Noman Qamar as the owner of Holiday Inn Willowbrook. Raza testified that his only connection to the hotel was as a contractor building it. He denied having any ownership interest in the hotel or receiving money directly from it.

Raza testified that when Scott Equipment sent him an invoice, he disputed the invoice with Martin and "told Scott Equipment, listen, why is this billed to me?" Raza could not recall whether he sent an email, fax, or letter disputing the invoice. But he testified that after he disputed the invoice, Martin "fixed the owner," and Raza did not receive additional invoices. Raza testified that the equipment was "delivered to the site" and that he was not responsible for payment of the equipment.

7

Before Raza finished testifying, the trial court stated that it was ready to rule. The court stated that Scott Equipment "sued the wrong person. Raza is not the responsible party here." Instead, he was "a contractor" and "either an agent for [Holiday Inn] Willowbrook or an agent for the construction company." Raza "received no personal benefit" from the transaction and "was paid by somebody else." Raza "signed everything in his name, but it's clear he is working for [Holiday Inn] Willowbrook."

The trial court rendered a final judgment ordering that Scott Equipment take nothing from Raza and that Raza recover his costs of court. Scott Equipment filed a general request for findings of fact and conclusions of law, and the court requested that each party file proposed findings and conclusions. The trial court signed Raza's proposed findings and conclusions.

Scott Equipment filed a motion for new trial and to vacate the judgment. The motion argued that Raza did not sign the sales contract "in any representative capacity" or "on behalf of any legal entity." The trial court denied the motion. This appeal followed.

**Sufficiency of Evidence**

In its first issue and part of its fourth issue, Scott Equipment asserts that the trial court erred by rendering a take-nothing judgment on its breach of contract claim because Raza signed the contract individually without disclosing he was acting on

8

behalf of an identified principal.[3] In its third issue, Scott Equipment challenges the sufficiency of the evidence supporting all the trial court's findings of fact. We construe these issues as legal and factual sufficiency challenges, and we address them together.[4]

## A.     Standard of Review

In an appeal from a bench trial, we review a trial court's conclusions of law de novo, and we will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.). When, as here, the appellate record contains a complete reporter's record, we review the trial court's findings of fact under the same standards for legal and factual sufficiency that govern review of jury findings. *Id.*

When a party challenges the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal that the evidence conclusively establishes all vital facts in support of the issue. *Lockheed Martin Corp. v. Hegar*, 601 S.W.3d 769, 774 (Tex. 2020); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In conducting this review,

---

[3]     The trial court also rendered a take-nothing judgment on Scott Equipment's quantum meruit cause of action, but Scott Equipment does not challenge this part of the judgment on appeal.

[4]     Scott Equipment does not state a standard of review for its appellate issues.

we first examine the record for evidence that supports the finding while ignoring all evidence to the contrary. *Dow Chem.*, 46 S.W.3d at 241. If no evidence supports the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We will sustain the legal sufficiency challenge only if the contrary proposition is conclusively established. *Id.*

When a party challenges the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. In conducting our review, we consider and weigh all the evidence relevant to the finding. *Id.* We will sustain the factual sufficiency challenge only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

The factfinder is the sole judge of witnesses' credibility and the weight to give their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The factfinder may choose to believe one witness and disbelieve another. *Id.* We may not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.    Governing Law

This case involves a sale of goods and therefore comes under the Uniform Commercial Code Article 2. *See* TEX. BUS. & COM. CODE § 2.102. The UCC

expressly provides that it is supplemented by "the principles of law and equity," including the law concerning principal and agent, except where the common law provisions conflict with the UCC. *Id.* § 1.103(b); *see Prosper Fla., Inc. v. Spicy World of USA, Inc.*, 649 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ("Consistent with this directive [in section 1.103(b)], we have held that the UCC supplants the common law solely when the common law conflicts with the provisions of the UCC.").

To establish a breach of contract claim, the plaintiff must prove that: (1) a valid contract exists between the plaintiff and the defendant; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result of the breach. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Whether an agent disclosed to the other contracting party that he was signing a contract on behalf of a principal is a fact question, and the law does not presume agency. *Gordon v. Leasman*, 365 S.W.3d 109, 114–15 (Tex. App.—Houston [1st Dist.] 2011, no pet.). To avoid personal liability, an agent must prove that he (1) disclosed his representative capacity to the other contracting party; and (2) identified the true principal for whom he was acting. *Id.* "The test for disclosure is the other party's knowledge, or reasonable grounds to know, of the principal's

11

existence or identity, irrespective of the source from which the other party obtains it." *Id.* at 115 (quoting *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.)). In determining whether an agent disclosed his principal, we look to the time the parties entered the contract. *Id.* Knowledge acquired after a cause of action has accrued cannot affect the right to recover from the agent personally on a contract. *Id.*

## C.     Whether Raza Disclosed an Identified Principal

In its first issue and part of its fourth issue, Scott Equipment challenges the take-nothing judgment on its breach of contract claim. It asserts that the contract lists Raza as a party to it and that Raza signed his name to it without indicating he was acting in a representative capacity. Scott Equipment argues that Raza did not disclose that he was acting on behalf of a principal, and Holiday Inn Willowbrook cannot be a principal because it is an assumed name rather than a business entity.

The parties do not dispute that a valid contract existed, Scott Equipment delivered the laundry equipment and installed it at the hotel, and Scott Equipment did not receive payment for the equipment. *See Prime Prods.*, 97 S.W.3d at 636 (stating elements of breach of contract). Instead, the sole dispute is whether Raza was individually liable under the contract. *See id.* (listing breach of contract elements, including whether valid contract exists *between plaintiff and defendant*).

12

The contract is a single page on Scott Equipment letterhead. It lists various laundry equipment and their prices, as well as shipping and installation costs. Raza signed the contract as "S. Raza" on a signature line with no indication that he was signing in any representative capacity. But the "Quote To" and "Ship To" portions at the top of the contract include both Holiday Inn Willowbrook and Raza.

Scott Equipment relies on Raza's signature to argue that he is individually liable under the contract. And both parties point to various documentary evidence supporting their arguments about whether Raza intended to be individually liable. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019) (stating that court may consider surrounding facts and circumstances as aid in construing contractual language even if contract is unambiguous as matter of law, although extrinsic evidence cannot be used to create ambiguity). For example, some documents maintained by Scott Equipment list Raza alone as the "Buyer" while other documents list Holiday Inn Willowbrook alone as the "Customer." We need not resolve this dispute because the dispositive issue is whether Raza disclosed to Scott Equipment that he was acting on behalf of a principal regardless of the face of the contract.

Scott Equipment argues that Raza did not disclose that he was signing the contract on behalf of any principal, and he has not identified a principal that is a

13

business entity. To support this argument, Scott Equipment relies solely on the following rule:

> It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another.

*Lachmann v. Houston Chron. Publ'g Co.*, 375 S.W.2d 783, 785 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.); *accord Gordon*, 365 S.W.3d at 114–15 (stating that to avoid personal liability, agent must prove he disclosed his representative capacity to other contracting party and he identified principal for whom he was acting).

*Lachmann* concerned two written contracts for advertising with the Houston Chronicle. 375 S.W.2d at 783–84. In the first contract with Artcraft Mattress Co., the signature stated: "Company: Artcraft Mattress Company, By: Albert Bentch." *Id.* In the second contract with Artcraft Mattress Co. and House of Unpainted Furniture, the signature stated: "Company: Artcraft Mattress Company and House of Unpainted Furniture, By: Arno Lachmann." *Id.* at 784. The Houston Chronicle eventually sued Bentch and Lachmann to recover unpaid fees under the contracts. *Id.* The parties stipulated that Artcraft Mattress Co. and House of Unpainted Furniture were not corporate entities but were trade names under which Household Manufacturing Co., Inc.—which did not appear in the contracts—did business. *Id.* After a bench trial, the trial court signed a judgment for the Houston Chronicle. *Id.*

14

Lachmann appealed arguing that no evidence established he signed the contract as a personal and individual obligation; rather, the evidence showed that he signed as an agent for Household Manufacturing. *Id.* The Houston Chronicle responded that Lachmann "failed to disclose to [the Houston Chronicle] at any time the fact that he was signing in the capacity of an agent or the identity of his true principal," and thus Lachmann was personally liable. *Id.* The Austin Court of Civil Appeals agreed with the Houston Chronicle and affirmed the trial court's judgment. *Id.* at 785–86. The court relied on the rule quoted above: To avoid personal liability, an agent must disclose that he is acting in a representative capacity and identify his principal. *Id.* at 785. Merely identifying a trade name does not sufficiently disclose the identity of the principal and the fact of agency. *Id.*

*Lachmann* is distinguishable on the facts. Raza testified that the contract was between Holiday Inn Willowbrook and Scott Equipment, and Scott Martin knew the owner of Holiday Inn Willowbrook. Raza identified Noman Qamar as the owner. Raza testified that he was merely an employee of a construction company building the hotel, and Smith testified that Scott Equipment knew Raza worked for the construction company. Raza also testified that he disputed an invoice that Scott Equipment sent to him, and Martin "fixed the owner" such that Raza did not receive further invoices, which supports an inference in favor of the judgment. Moreover, some of Scott Equipment's own documents—including the contract itself—identify

15

Holiday Inn Willowbrook as a party or "Customer" to the transaction. This evidence also supports an inference that Scott Equipment knew that Holiday Inn Willowbrook was the true party to the equipment sale when Scott Equipment entered the contract. *See Gordon*, 365 S.W.3d at 115 (stating that test for disclosure is other party's knowledge or reasonable grounds to know of principal's existence or identity regardless of source of knowledge).

Scott Equipment also argues that Holiday Inn Willowbrook is an assumed name which is not sufficient to disclose its identity as a principal. *See Lachmann*, 375 S.W.2d at 785 (stating that identification of trade-name principal does not sufficiently disclose identity of principal and fact of agency). Here, too, *Lachmann* is distinguishable.

Scott Equipment correctly argues that Raza denied knowing whether Holiday Inn Willowbrook was an LLC, a corporation, or an assumed name, and he conceded at trial that the contract did not contain "any kind of legal designation" next to Holiday Inn Willowbrook's name. But as discussed above, Raza testified that Scott Equipment knew that Noman Qamar owned Holiday Inn Willowbrook. Qamar is a person, and Raza's testimony indicates that Qamar operated Holiday Inn Willowbrook as a sole proprietorship. "[T]he assumed name of a sole proprietorship is not a separate legal entity or even a different capacity of the individual sole proprietor." *Horie v. Law Offs. of Art Dula*, 560 S.W.3d 425, 434 (Tex. App.—

16

Houston [14th Dist.] 2018, no pet.); *see also Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A sole proprietorship does not have a separate legal existence distinct from the operator of the business."); Tex. R. Civ. P. 28. This evidence shows that Raza disclosed the identity of a true principal—Qamar—rather than just an assumed name. Because this evidence supports a finding of disclosure, we conclude that the evidence is legally sufficient to support the trial court's finding that Raza was not individually liable under the contract. *See Hegar*, 601 S.W.3d at 774; *Dow Chem.*, 46 S.W.3d at 241.

There was little evidence to the contrary. *See Dow Chem.*, 46 S.W.3d at 242 (stating factual sufficiency standard of review). Smith testified that Raza agreed to be individually liable under the contract, but Smith also conceded that he had no personal knowledge of the transaction and had never spoken to Raza or Qamar. As factfinder, the trial court reasonably could have disbelieved Smith's testimony that Raza agreed to be individually liable, particularly when Smith lacked personal knowledge. *See City of Keller*, 168 S.W.3d at 819. And although some of Scott Equipment's documents identify Raza as the "Buyer" of the equipment—including the contract which lists Raza's name and was signed by him—this bears little on the disclosure issue in light of Raza's testimony. After considering and weighing all the evidence relevant to disclosure of Raza's principal, we conclude that the evidence supporting the trial court's finding is not so weak or so against the great weight and

17

preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242.

We overrule Scott Equipment's first issue and its fourth issue in part.

## D.    Findings of Fact

In its third issue, Scott Equipment challenges the sufficiency of the evidence supporting every finding of fact.[5]

After signing the judgment, the trial court signed the following findings of fact:

> ## FINDINGS OF FACTS
>
> 4.    Classic Construction Company was hired by Holiday Inn Willowbrook (Norman [sic] Qamar – owner) to build the hotel at 18530 Texas 249, Houston, Texas 77070.
>
> 5.    Classic Construction Company operated in offices located at: 13170 FM 529, Suite G, Houston, Texas 77041.
>
> 6.    Scott Martin, of Scott Equipment, Inc., coordinated with Syed Raza regarding the installation of washers and dryers in the hotel. The coordination related to the construction of the property and the installation of the machines.
>
> 7.    Scott Martin sold Scott Equipment, Inc. after the hotel project was completed.
>
> 8.    Syed Raza spoke with Scott Martin making clear that the invoices should not be sent to the construction company.
>
> 9.    Scott Martin knew Norman [sic] Qamar before the equipment was installed at the Holiday Inn.

---

[5]    Neither party contends that the findings of fact do not support the judgment. *See* TEX. R. CIV. P. 299 (stating that findings of fact "must form the basis of the judgment upon all grounds of recovery and of defense embraced therein").

18

10. The construction company did not agree to buy the equipment.

11. Syed Raza, at all times, acted in his capacity as manager of the construction project.

An ultimate fact issue is "one that is essential to the cause of action and has a direct effect on the judgment." *Wood v. Wiggins*, 650 S.W.3d 533, 562 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (quoting *Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g)). An erroneous finding of fact on an ultimate issue is harmful, but error in an immaterial finding is harmless and not grounds for reversal. *Id.*; *accord Andrews v. Key*, 13 S.W. 640, 641 (Tex. 1890) (stating that immaterial findings are "no ground for reversing the judgment" because they "are harmless": "The question in every such case must be whether or not the material facts found by the court are sufficient to support the judgment").

Considering our analysis above, the only material findings are Findings 4, 6, 8, 9, 10, and 11. These findings establish that: Raza acted in his capacity as an employee for the construction company, which was hired by Holiday Inn Willowbrook to build the hotel; Qamar owned the hotel, and Scott Equipment knew Qamar owned the hotel before the contract for laundry equipment was executed; Scott Equipment coordinated with Raza regarding the installation of the equipment in the hotel; and Raza on behalf of the construction company did not agree to buy the equipment. We disregard the remaining findings as immaterial and therefore

19

harmless. *See Wood*, 650 S.W.3d at 562. For each of the material findings, Scott Equipment asserts a narrow challenge to the finding and then reiterates the arguments raised in its first issue, which we already addressed above.

Finding 4 stated: "Classic Construction Company was hired by Holiday Inn Willowbrook (Norman [sic] Qamar – owner) to build the hotel at 18530 Texas 249, Houston, Texas 77070." Scott Equipment argues that Raza did not testify that he worked for Classic Construction Company or that this specific company was hired to do anything by Holiday Inn Willowbrook.

The name of the construction company is immaterial because it does not appear in the contract and there was no evidence that Raza entered the contract with Scott Equipment on behalf of the construction company.[6] Raza did, however, testify that he worked as a contractor building the hotel, and Smith also testified that Scott Equipment knew Raza was employed by the construction company. To the extent no evidence supported the name of the construction company, any such error is immaterial and thus harmless. *See id.*

Finding 6 stated: "Scott Martin, of Scott Equipment, Inc., coordinated with Syed Raza regarding the installation of washers and dryers in the hotel. The coordination related to the construction of the property and the installation of the

---

[6]     We note, however, that Raza's counsel twice represented to the court during trial that Raza worked for Classic Construction as a contractor. Scott Equipment did not object to or dispute these representations.

20

machines." Scott Equipment argues that "no evidence and/or testimony from [Raza] at trial [showed] that Scott Martin of Scott Equipment, Inc. coordinated with [Raza] regarding the installation of washers and dryers in a hotel."

This argument mischaracterizes the record. Raza testified that the contract was "between the Holiday Inn Willowbrook, the owner, and Mr. Scott Martin. I am the contractor. These are the specs which are going with the hotel. . . . I am the facilitator." When asked about text messages he sent to Scott Equipment, Raza testified that he "[c]oordinat[ed] with them [Scott Equipment] as per the owner, you know, the business owner." Smith also testified that Scott Equipment generally coordinates with the contractor to ensure the right number of units are installed at a project location, the equipment will fit the intended space, and everything will run smoothly. There was no evidence to the contrary. Thus, Finding 6 is supported by legally and factually sufficient evidence. *See Dow Chem.*, 46 S.W.3d at 241–42.

Finding 8 stated: "Syed Raza spoke with Scott Martin making clear that the invoices should not be sent to the construction company." Scott Equipment argues that Raza did not testify he made it clear that invoices should not be sent to the construction company. But Raza did testify that he received an invoice for the equipment, which he disputed with Martin: "The minute I [saw] [the invoice], I told Scott Equipment, listen, why is this billed to me?" Although Scott Equipment's challenge is correct to the extent that Raza did not testify about invoices sent to the

21

construction company, this is immaterial in light of Scott Equipment's claim seeking to hold Raza—not the construction company—liable for breach of contract. No evidence contradicted Raza's testimony that he disputed to Scott Equipment his obligation to pay the invoice sent to him. Thus, Finding 8 is supported by legally and factually sufficient evidence. *See id.*

Finding 9 stated: "Scott Martin knew Norman [sic] Qamar before the equipment was installed at the Holiday Inn." Scott Equipment argues that Raza did not testify that Martin knew Qamar before the equipment was installed at the hotel. This again mischaracterizes the record. Raza identified Qamar as the owner of Holiday Inn Willowbrook. Raza also testified that the contract was between Scott Equipment and Holiday Inn Willowbrook and that "Scott Martin knew the owners [of Holiday Inn Willowbrook] all along." There was no evidence that Scott Equipment did not know "all along" that Qamar owned the hotel. Finding 9 is therefore supported by legally and factually sufficient evidence. *See id.*

Finding 10 stated: "The construction company did not agree to buy the equipment." Finding 11 stated: "Syed Raza, at all times, acted in his capacity as manager of the construction project." We consider these findings together because they establish that Raza was acting on behalf of his employer, a contractor for Holiday Inn Willowbrook, when he signed the contract and Raza—acting in his capacity as employee—did not agree to buy the equipment.

22

In challenging both these findings, Scott Equipment argues that Raza did not testify "regarding a specific construction company buying anything from [Scott Equipment]" or that Raza was the manager of the construction project. Both arguments address immaterial points in these findings. *See Wood*, 650 S.W.3d at 562. Raza testified that he worked for the construction company—though not specifically as manager—and Smith testified that Scott Equipment knew Raza was employed by the construction company. What matters is that Raza—whether acting alone or on behalf of his employer for Holiday Inn Willowbrook—did not agree to buy the laundry equipment.[7] We concluded above that legally and factually sufficient evidence supports the take-nothing judgment based on Raza's disclosure that he was acting on behalf of an identified principal. Thus, the material parts of these findings are supported by legally and factually sufficient evidence. *See Dow Chem.*, 46 S.W.3d at 241–42.

We overrule Scott Equipment's third issue.

## Evidentiary Objection

In its second issue, Scott Equipment complains about the admission of testimony that Holiday Inn Willowbrook was the sole party to the contract because

---

[7]     We note that in responding to an objection, Raza's counsel read the following line from Raza's affidavit attached to his verified answer: "I [Raza] was the manager of the construction company, New Classic Investments, Inc. d/b/a Classic Construction Company[.]"

Raza did not file a sworn denial of the allegation that he did business as Holiday Inn Willowbrook. Whatever the merit of this complaint, the admission of this evidence did not cause any harm.

There is a long tradition of giving the trial court wide latitude to admit evidence. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). In a bench trial, appellate courts customarily presume that the trial court disregarded inadmissible evidence. *Highpoint of Montgomery Corp. v. Vail*, 638 S.W.2d 624, 628 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Thus, most trial judges in bench trials give the litigants broad leeway in introducing evidence because the judge knows that he or she will not lightly be second-guessed about the ruling to admit the evidence. Nothing in this record indicates that any probable harm flowed from the trial court's ruling.

Furthermore, we see no abuse of discretion in the trial court's ruling. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (stating that courts review evidentiary rulings for abuse of discretion); *Owens-Corning Fiberglas*, 972 S.W.2d at 43 (stating that appellate court must uphold trial court's evidentiary ruling if any legitimate basis supports ruling).

Rule of Civil Procedure 93 requires pleadings asserting certain matters to be verified by affidavit. TEX. R. CIV. P. 93. One such matter is that "a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged."

TEX. R. CIV. P. 93(14). If a party fails to comply with Rule 93, the party waives its right to complain about the matter. *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (per curiam). Absent special exceptions, courts liberally construe responsive pleadings in the pleader's favor. *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018); *Guadalupe Econ. Servs. Corp. v. Dehoyos*, 183 S.W.3d 712, 716 (Tex. App.—Austin 2005, no pet.). But an answer must contain sufficient information to place in issue the claims made in the suit. *Dehoyos*, 183 S.W.3d at 716.

Scott Equipment's live petition asserted that Raza was liable for the sale of equipment "individually" and doing business as Holiday Inn Willowbrook. Raza filed a verified answer asserting several affirmative defenses. Raza alleged that "the incident in question" was caused by the negligent or wrongful conduct of "third-parties outside the control of this Defendant, namely Holiday Inn & Suites Willowbrook." Raza further alleged that he was an improper party because Scott Equipment "only entered a[n] agreement to deliver the referenced goods with Holiday Inn & Suites Willowbrook." Finally, Raza alleged that he had not been sued in the proper capacity.

In the verification affidavit, Raza stated that he was a manager of a construction company which was hired by Holiday Inn Willowbrook, and Noman Qamar owned the Holiday Inn Willowbrook. Raza denied that he was an owner,

manager, or officer of the hotel. Raza also stated that he is "not a proper party" and "did not agree to pay for the washers and dryers."

At trial, Scott Equipment objected when Raza asked Smith about various documents listing Holiday Inn Willowbrook as Scott Equipment's customer for the equipment sale. Scott Equipment based its objection on the ground that Raza did not file a verified pleading under Rule 93 denying that he did business as Holiday Inn Willowbrook. Raza responded by reading the affidavit attached to his verified answer. The trial court overruled the objection.

We disagree with Scott Equipment that the trial court abused its discretion by overruling the objection. Whether Holiday Inn Willowbrook was a party to the contract says little about whether Raza did business as the hotel. *See Horie*, 560 S.W.3d at 434 (stating that assumed name of sole proprietorship is not separate legal entity from individual sole proprietor). Moreover, Raza testified—without objection—that he had no ownership interest in the hotel. This testimony is more relevant to whether Raza did business as the hotel, but it did not draw any objection. The trial court reasonably could have believed Raza's testimony. *See City of Keller*, 168 S.W.3d at 819.

Furthermore, Raza's affidavit expressly denied that he was an owner, manager, or officer of Holiday Inn Willowbrook. He stated that Holiday Inn Willowbrook was owned by Qamar, and Holiday Inn Willowbrook hired the

26

construction company that employed Raza. Although Raza did not specifically deny that he did business as Holiday Inn Willowbrook, his sworn denial of any ownership or other legal interest in the hotel is sufficient to deny that he did business as the hotel and to place this defense in issue. *See Dehoyos*, 183 S.W.3d at 716; *see also* TEX. R. CIV. P. 93(14). After reviewing the entirety of Raza's testimony and his verified answer, which distinguished between the construction company and the hotel, we hold that the trial court did not abuse its discretion by overruling Scott Equipment's objection, and Scott Equipment has not shown harm from the ruling.

We overrule Scott Equipment's second issue.

## Attorney's Fees

Finally, in the remaining part of its fourth issue, Scott Equipment argues that it was entitled to attorney's fees under Civil Practice and Remedies Code Chapter 38. Section 38.001 authorizes a party to recover reasonable attorney's fees from an individual if the claim is for an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). To obtain attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 490 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Because we have determined that the trial court did not err in signing a take-nothing judgment on Scott

27

Equipment's breach of contract claim, there is no ruling that can support an award of attorney's fees to Scott Equipment under Chapter 38. We therefore hold that the trial court did not err by declining to award Scott Equipment attorney's fees.

We overrule the remainder of Scott Equipment's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.